**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

ZHIPENG YIN; ZHEN GUO; and
ZHENGFEI GUAN,

   *Plaintiffs*,

v.

MANNY DIAZ, JR., in his official capacities
as COMMISSIONER, FLORIDA
DEPARTMENT OF EDUCATION and as a
MEMBER of the STATE UNIVERSITY
SYSTEM OF FLORIDA BOARD OF
GOVERNORS; RAYMOND RODRIGUES,
in his official capacity as CHANCELLOR OF
THE STATE UNIVERSITY SYSTEM OF
FLORIDA; ASHLEY BELL BARNETT,
TIM CERIO, AUBREY EDGE, EDWARD
HADDOCK, JACK HITCHCOCK, KEN
JONES, BRIAN LAMB, ALAN LEVINE,
CHARLES H. LYDECKER, CRAIG
MATEER, JOSE OLIVA, AMANDA J.
PHALIN, & ERIC SILAGY, in their official
capacities as MEMBERS of the STATE
UNIVERSITY SYSTEM OF FLORIDA
BOARD OF GOVERNORS,

   *Defendants*.

Case No. _____

**COMPLAINT**

**I.  INTRODUCTION**

1. This lawsuit seeks prospective injunctive relief in challenging a 2023 Florida statutory enactment, SB 846 (now codified at Fla. Stat. § 288.860, hereinafter referred to as "SB 846"), that violates federal law by presumptively prohibiting the academic employment in Florida public universities and colleges of international students domiciled in seven foreign countries, including most prominently China, and accordingly also injures professors established

- 1 -

in Florida who need to hire these students to succeed in their professorial careers. Florida's SB 846 is unlawful under:

 a. federal preemption doctrine because SB 846 improperly asserts a state veto over issues subject to—

  (i) the exclusive federal power over immigration law, such as its authorization of employment rights anywhere in the United States; and

  (ii) predominant and superior federal power, such as national security and foreign affairs, and which in this instance the federal government is managing through its exclusive immigration power;

 b. federal equal protection guarantees because SB 846:

  (i) explicitly discriminates based upon alienage, specifically "nonimmigrant" status under federal immigration law, which is subject to, but fails, strict scrutiny review; and

  (ii) facially uses domicile as a proxy for improper discriminatory prohibitions in federal employment rights that are actually based on national origin, alienage, race, and ethnicity, disproportionately burdening individuals from China; and

 c. constitutional procedural due process guarantees, which protect against arbitrary, irrational, oppressive, discriminatory, and egregious state acts and assure, at a minimum, fair notice and an opportunity to be meaningfully heard.

2. In May 1882, more than one hundred and forty years ago, the United States passed the Chinese Exclusion Act, which banned all Chinese laborers from immigrating to the United States for ten years, although the ban was later made permanent. It was the first and only major

United States law ever implemented to prevent all members of a specific racial group from immigrating to the United States. The law remained in force until 1943, when China became a wartime ally of the United States against Japan.

3. Through 2023's SB 846, Florida has succumbed to the temptation to target "disfavored" foreigners—this time at the state level—including most prominently, once again, individuals from China.

4. Under Florida's SB 846, individuals who are not United States citizens or legal permanent residents ("LPRs"), and whose domicile is in China or one of six other specified foreign countries, are presumptively prohibited from any academic employment in Florida public universities and colleges. This is so even when these individuals have already satisfied all federal immigration law requirements—including national security screenings, the primary interest Florida purports to protect through SB 846. Thus, the federal government has already extended them employment rights for academic purposes anywhere in the United States, including Florida.

5. SB 846 asserts a standing and presumptive state veto power over such employment, which these individuals can overcome only by satisfying additional Florida registration and exemption requirements, over and above what federal immigration law demands.

6. To overcome SB 846's state veto, covered individuals must separately apply to Florida authorities, who control whether the employment will be allowed. These individuals must now, most pertinently, also satisfy Florida academic authorities that their employment will not threaten national security interests, despite already having resolved that issue with federal immigration authorities. In the absence of approval from these Florida authorities, their employment is unlawful despite existing authorization by federal immigration law.

7.     Under SB 846, Florida authorities must tally annually the approved state registration and exemption applications for academic employment in its public universities and colleges and report them to three of the highest Florida government officials, including the Governor.

8.     Violations of SB 846 can be punished through loss of public funding and grant eligibility.

9.     Plaintiffs, who come from China, bring this action because SB 846 has unlawfully injured, or imminently threatens to unlawfully injure, them.

10.     Plaintiffs are two doctoral students accepted for enrollment and related academic employment at Florida International University ("FIU"), and one professor at the University of Florida ("UF"), all of whom are presently being injured by SB 846's restrictions and its broad effects and who also face future injury from the new law. SB 846 harms their current and future academic and professional careers, stigmatizes them and their communities, and casts a cloud of suspicion over individuals from China who seek academic employment in Florida public universities and colleges.

a.     The two doctoral students, Plaintiffs Zhipeng Yin and Zhen Guo, are confronting the loss of FIU academic employment that federal immigration law authorized, including all the educational, training, research, scientific, publication, mentoring, and reputational benefits that stem from such academic employment, which threaten their present doctoral studies and future professional prospects, as well as the current loss of their salaries and accompanying full tuition waivers.

b.     Plaintiff, Professor Zhengfei Guan, is facing a new inability to recruit and hire the best graduate assistants and postdoctoral fellows, which is presently injuring his

academic career as it negatively impacts his publication productivity and existing research grants, and is presently slowing and threatens to further slow his research grant applications in the future. SB 846's negative impact on Plaintiff Guan is particularly unfortunate because a large part of his current research focuses on the economics of citrus disease management to protect citrus, Florida's most important agricultural sector, from a spreading citrus disease that poses a survival threat to the industry.

11.     Plaintiffs seek a declaratory judgment that Florida's SB 846 is unlawful because it violates the United States Constitution, federal preemption doctrine, and federal statutory law. Plaintiffs further seek an injunction to stop Florida's enforcement of SB 846 against them.

## II.  PARTIES

12.     Plaintiff Zhipeng Yin is an individual and natural person, lawfully residing in Florida.

13.     Plaintiff Zhen Guo is an individual and natural person, lawfully residing in Florida.

14.     Plaintiff Zhengfei Guan is an individual and natural person, lawfully residing in Florida.

15.     Manny Diaz, Jr. is the Commissioner of the Florida Department of Education, and as such has extensive responsibilities with regard to, and power over, Florida public universities and colleges. [1] *See* Fla. Stat. §§ 20.15(2), 1001.10(1)–(2), 1001.10(6)–(7), 1001.11(1)–(3), 1001.20(1)–(3) (2023). He is also a member of the State University System of Florida Board of Governors ("Board of Governors"). *Id.* § 1001.70(1). He is sued in his official capacity in those

---

[1] The Florida State Board of Education appoints the Commissioner. FLA. CONST.art. IX, § 2; Fla. Stat. § 20.15(2). As Commissioner, he serves as the Florida Department of Education's Executive Director. Fla. Stat. § 20.15(2).

roles, through which he has implementation, oversight, and/or enforcement authority with regard to SB 846. *See* Fla. Stat. §§ 288.860(3)(d)–(f), 1008.32(2), 1008.322(5)(a)–(b) (2023); Fla. Admin. Code R. 6A-14.097(5) (2023); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(c)–(d), (9) (2023).[2]

16.     Raymond Rodrigues is the Chancellor of the State University System of Florida. *See* Fla. Stat. § 20.155(3). He is sued in his official capacity because he has implementation, oversight, and/or enforcement authority with regard to SB 846. *See* Fla. Stat. §§ 288.860(3)(d)(1), 1008.322(3) (2023); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(c), (9).

17.     Ashley Bell Barnett, Tim Cerio, Aubrey Edge, Edward Haddock, Jack Hitchcock, Ken Jones, Brian Lamb, Alan Levine, Charles H. Lydecker, Craig Mateer, Jose Oliva, Amanda J. Phalin, and Eric Silagy are each members of the Board of Governors. *See* FLA. CONST.art. IX, § 7(d); Fla. Stat. §§ 20.155(1), 20.155(4)(a), 1001.70(1), 1001.705(1)(a), 1001.705(2). They are each sued in their official capacity in those roles, through which each of them has implementation, oversight, and/or enforcement authority with regard to SB 846. *See* Fla. Stat. §§ 288.860(3)(d), 288.860(3)(f)–(g), 1008.322; Fla. Univ. Bd. Governors Reg. §§ 9.012(8)–(9).

### III.   JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and because it arises under the United States Constitution and federal law. Subject matter jurisdiction also exists under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3) (civil rights) because this action seeks to redress the deprivation of and infringement upon, under color of state law, rights, privileges, and immunities secured by the United States Constitution or federal law

---

[2] Florida University Board of Governors regulations are available online at https://www.flbog.edu/regulations/active-regulations/.

providing for the equal rights of all persons within the jurisdiction of the United States.

19. There is an actual, present, justiciable controversy between the parties within the meaning of the United States Constitution's Article III because Florida's recent enactment of SB 846 constitutes a present and continuing infringement of Plaintiffs' federal constitutional and statutory rights.

20. This Court has authority to grant declaratory relief to Plaintiffs pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3), and Federal Rule of Civil Procedure 57.

21. In addition, this Court has authority to grant injunctive relief in this action under the All Writs Act, 28 U.S.C. § 1651, as well as 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3), and Federal Rule of Civil Procedure 65.

22. This Court has personal jurisdiction over Defendants, all of whom are either elected or appointed Florida state officials who work or reside in Florida. No state sovereign immunity defense under the United States Constitution's Eleventh Amendment applies because the Court's exercise of personal jurisdiction over Defendants in their official capacities as Florida state government officials, in this action seeking prospective injunctive relief, is appropriate under *Ex Parte Young*, 209 U.S. 123 (1908).

23. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because one or more defendants reside in this judicial district and all defendants are Florida residents, or under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this Complaint's claims, such as Plaintiffs Yin's and Guo's mistreatment at FIU, have occurred or continue to occur in this judicial district, or under 28 U.S.C. § 1391(b)(3) because at least one defendant is subject to personal jurisdiction in this judicial district for this action.

### IV.   FACTS

**A.      Asserting Discredited National Security Interests, Florida Enacted SB 846, Which Presumptively Prohibits the Academic Employment of Chinese Nonimmigrants in Florida Public Universities and Colleges.**

24.      In May 2023, Florida adopted a set of new state laws "to counteract the malign influence of the Chinese Communist Party [('CCP']] in the state of Florida," and to, among other concerns, "combat . . . higher education subterfuge carried out by the CCP and its agents."[3] An explicit goal was for Florida to take state leadership "in protecting American interests from foreign threats" as well as to "provide[] a blueprint for other states to do the same."[4]

25.      SB 846 was part of this set of new laws.[5]

26.      SB 846 presumptively bars international students from seven "foreign countries of concern"—China, Russia, Iran, North Korea, Cuba, Syria, and the Venezuelan regime under Nicolás Maduro—from any kind of academic employment in Florida public universities and colleges. Fla. Stat. § 288.860(1)(a); *see also* Fla. Admin. Code R. 6A-14.097(1)(e); Fla. Univ. Bd. Governors Reg. § 9.012(1)(d).

27.      SB 846 accomplishes this goal by presumptively barring any Florida public university or college from "participat[ing]" in any "partnership" or "agreement" concerning "a written statement of mutual interest in academic or research collaboration" with any covered

---

[3] *Governor Ron DeSantis Cracks Down on Communist China*, 46th Governor of Florida (May 8, 2023), https://www.flgov.com/2023/05/08/governor-ron-desantis-cracks-down-on-communist-china/.

[4] *Id.*

[5] *Id.* Another one of those new laws, SB 264, implemented discriminatory prohibitions on land ownership in Florida, targeting the same population as SB 846, and thus similarly threatens to disproportionately affect individuals from China. The Eleventh Circuit has enjoined enforcement of SB 264 against several individual plaintiffs pending appeal given the likelihood of their success on the merits. Order of the Court, *Shen v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, No. 23-12737 (11th Cir. Feb. 1, 2024), ECF No. 59 [hereinafter "*Shen v. Simpson*"].

"foreign principal." Fla. Stat. §§ 288.860(1)(g)–(h), 3(a)–(c); *see also* Fla. Admin. Code R. 6A-14.097(4)(a)–(b); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(a)–(b). This restriction creates an initial prohibition on Florida public universities and colleges from entering into academic employment of any covered "foreign principal" given that any such employment would be entered into through a "partnership" or "agreement."

28.     For present purposes, SB 846 uses domicile in a "foreign country of concern" as the primary defining trait of a "foreign principal," which includes:

> [a]ny person who is *domiciled* in a foreign country of concern and is not a citizen or lawful permanent resident of the United States.

Fla. Stat. § 288.860(1)(b)(4) (italics added); *see also* Fla. Admin. Code R. 6A-14.097(1)(g)(4); Fla. Univ. Bd. Governors Reg. § 9.012(1)(f)(4). None of these provisions specifically defines domicile. (For ease of reference, any person treated as a "foreign principal" under § 288.860(1)(b)(4) will also be referred to, for reasons explained in more detail below,[6] as a "nonimmigrant" under federal immigration law.)

29.     Among these seven "countr[ies] of concern," SB 846 will most heavily impact Chinese nonimmigrants given that they comprise the vast majority of international students and professors eligible for actual or prospective academic employment in Florida public universities and colleges.[7]

---

[6] *See ¶¶* 47–49 below.

[7] *See, e.g.*, Amy Qin, *Florida Law Chills Chinese Student Recruitment*, N.Y. TIMES (last updated Dec. 22, 2023), https://www.nytimes.com/2023/12/15/us/florida-law-chills-chinese-student-recruitment.html (reporting that China is "the largest source of international students at [the University of] Florida"; that "[i]n 2020, 1,100 students—40 percent of the University of Florida's international graduate student body—came from China"; and quoting Professor Richard Woodard as stating that "[m]any of our best faculty are from China" and "the Chinese are our best graduate students"); Jeffrey Mervis, *New Florida Law Blocks Chinese Students From Academic Labs*, SCIENCE (Dec. 12, 2023, 12:05 PM), https://www.science.org/content/article/new-florida-law-blocks-chinese-students-from-academic-labs (reporting that University of Florida Vice

30.     Individualized exemptions from SB 846's presumptive bar to academic employment may be obtained upon approval from the state university Board of Governors or the state college Board of Education in specific cases where a "partnership or agreement" is deemed "to be valuable to students" as well as the state university or college and "*is not detrimental to the safety or security of the United States or its residents*." Fla. Stat. §§ 288.860(3)(d), (e) (emphasis added); *see also* Fla. Admin. Code R. 6A-14.097(4)(c)–(d); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(c)–(d).

a.     The Board of Governors, which has authority to "operate, regulate, control, and be fully responsible for the management of the whole university system,"[8] issued a university regulation in compliance with these directives.[9] Fla. Univ. Bd. Governors Reg. § 9.012(8). To obtain approval from the Board of Governors to academically employ any covered nonimmigrant, "each university" must provide the following information with each individual request:

(1) Entity with which the university is entering into an agreement or partnership[.]
(2) Location of the entity reported in (8)(c)(1)[.]
(3) Expected start and end date of the agreement or partnership[.]
(4) Purpose and benefits of the agreement or partnership[.]
(5) Any identified risks of the agreement or partnership[.]
(6) Projected number of students, faculty, and university staff participating in the agreement or partnership[.]

President for Research David Norton indicated that SB 846 could impact about 550 international students, with a substantial number coming from China); *Letter from Univ. of Fla. Faculty to President Sasse, Univ. of Fla., et al., Urgent Clarification Request Regarding Hiring International Students with Assistantship*, https://docs.google.com/forms/d/e/1FAIpQLSezPVkPl6o1aVzy388egl1hhoNKEpnkP0623ByfPptLc1KtYg/viewform (petition signed by about 400 University of Florida faculty members as of February 27, 2024 and indicating that "significant proportion" of affected international students come from China and Iran).

[8] FLA. CONST. art. IX, § 7(d); *see also* Fla. Stat. §§ 20.155(1), 20.155 (4)(a), 1001.70(1), 1001.705(1)(a), 1001.705(2).

[9] Florida law authorizes the Board of Governors to issue university regulations. Fla. Stat. § 1001.706(2).

(7) Estimated budget and source of funds to support the agreement or partnership[.]
(8) Other information as requested by the Chancellor[.]

*Id.* § 9.012(8)(c).

      b.      To obtain similar approval from the Board of Education, which has jurisdiction over Florida public colleges, [10] those colleges must provide the following information with each individual request:

1. Entity with which the state college is entering into an agreement or partnership;
2. Location of the entity reported in (4)(c)1.[*sic*];
3. Expected start and end date of the agreement or partnership;
4. Purpose and benefits of the agreement or partnership;
5. Any identified risks of the agreement or partnership;
6. Projected number of students, faculty, and staff participating in the agreement or partnership;
7. Estimated budget and source of funds to support the agreement or partnership;
8. Draft of the agreement or partnership, and;
9. Other information as requested by the Chancellor.

Fla. Admin. Code R. 6A-14.097(4)(c).

      31.      Annually, the "Boards of Governors and the Department of Education"[11] must report to the Florida "Governor, the President of the Senate, and the Speaker of the House of Representatives" the following information: "[d]ata reflecting any . . . agreement, partnership, or contract between a state university or state college and . . . with a foreign principal"; "[d]ata reflecting any office, campus, or physical location used or maintained by a state university or state college . . . with a foreign principal"; and "[t]he date on which any such . . . agreement, partnership, or contract . . . is expected to terminate." Fla. Stat. §§ 288.860(3)(f)(1)–(3).

---

[10] *See* FLA. CONST.art. IX, § 2; Fla. Stat. § 20.15(1). Florida law authorizes the Board of Education to issue regulations governing Florida public colleges. *See* Fla. Stat. § 1001.02(1).

[11] "The State Board of Education is the head of the Department of Education." Fla. Stat. § 20.15(1).

a.   For Florida's public universities, the Board of Governors issued a regulation that mirrors these requirements nearly verbatim without further specifying what data exactly are to be reported. Fla. Univ. Bd. Governors Reg. § 9.012(9).

b.   For Florida's public colleges, the Department of Education also issued a regulation but specified that:

at a minimum, the report must include all of the following information for the previous fiscal year:
(a) A copy of any . . . agreement, partnership, or contract between the state college and . . . a foreign principal.
(b) Data reflecting any office, campus, or physical location used or maintained by the state college . . . with a foreign principal.
(c) A summary of the activities, communications, and fiscal transactions.
(d) The date on which any such grant program, agreement, partnership, or contract reported pursuant to (5)(a) is expected to terminate.

Fla. Admin. Code R. 6A-14.097(5).

32.   The Board of Governors and Board of Education may punish any Florida public university or college that violates these academic employment limitations through the loss of various sources of public funding and the loss of competitive grant eligibility. Fla. Stat. §§ 288.860(3)(d)-(e); *see also id.* §§ 1008.32(4)(b)–(c), 1008.322(5)(a)–(b); Fla. Admin. Code R. 6A-14.097(4)(e); Fla. Univ. Bd. Governors Reg. § 9.012(8)(d).

33.   SB 846 adds to a trend of unfounded and discredited fearmongering against people from China.

a.   One prominent study by the Cato Institute confirms the vastly disproportionate fearmongering against people from China. Over a thirty-year period from 1990 to 2019, the study identified 1,485 individuals convicted of espionage and espionage-related offenses on American soil. Of these, 583 involved native-born Americans. Only 171 involved Chinese-born individuals spying for China, with these

prosecutions being "rarely related to national security." Thus, native-born Americans were over three times more likely to commit espionage than native-born Chinese who spied for China, which evidences the extremely minimal threat of the latter committing espionage against United States national security interests.[12]

b.      According to Statista, a highly respected, leading market and consumer data source commonly used in academic research, over the past ten years an annual average of about 326,000 international students from China studied in United States universities and colleges.[13] Over that entire ten-year period, Plaintiffs' research has revealed merely one single case in which an international student from China was convicted on espionage-related charges.[14]

**B.      Plaintiffs' Backgrounds, Including Their Federally Authorized Academic Employment Anywhere in the United States, and SB 846's Harm to Them Due to Its Impact on Academic Employment in Florida Public Universities and Colleges**

34.      Plaintiffs lawfully reside in Florida and all are currently suffering from the direct impact of Florida's SB 846.

35.      Neither SB 846 nor the Florida university or college regulations passed in furtherance of it define the term "domicile." However, Florida law generally defines domicile as a

---

[12] *See* Alex Nowrasteh, *How Much of a Threat Is Espionage From Chinese Immigrants?*, CATO INST. (Feb. 20, 2021), https://www.cato.org/commentary/how-much-threat-espionage-chinese-immigrants; *see generally* Alex Nowrasteh, *Espionage, Espionage-Related Crimes, and Immigration: A Risk Analysis, 1990–2019*, CATO INST. (Feb. 9, 2021), https://www.cato.org/publications/policy-analysis/espionage-espionage-related-crimes-immigration-risk-analysis-1990-2019.

[13] *Number of college and university students from China in the United States from academic year 2012/13 to 2022/23*, STATISTA (Nov. 2023), https://www.statista.com/statistics/372900/number-of-chinese-students-that-study-in-the-us/.

[14] Nectar Gan, *Chinese engineer sentenced to 8 years in US prison for spying*, CNN (Jan. 26, 2023, 3:49 AM), https://www.cnn.com/2023/01/25/politics/chinese-engineer-sentence-spying-intl-hnk/index.html.

person's true, principal, and permanent home.

36.     As detailed below, and regardless of currently residing in the United States, Florida—through the university Defendants and FIU—is deeming Plaintiffs Yin and Guo to be domiciled in their country of origin, China, by virtue of their nonimmigrant visa status in the United States.

37.     Plaintiff Yin, who comes from and is a citizen of China, is neither a United States citizen nor an LPR but has permission to be in the United States as the holder of a valid F-1 student visa that the federal government has issued through its immigration system, 8 U.S.C. § 1101(a)(15)(F), which under federal regulation authorizes him to engage in related academic work anywhere in the United States, 8 C.F.R. §§ 214.2(f)(1)(i), (f)(9)–(11).

    a.     Plaintiff Yin is pursuing his doctoral studies in Computer and Information Sciences at FIU.

    b.     He is not a member of the Chinese government or the CCP.

    c.     He aspires to enter industry and further pursue his doctoral studies research, such as through joining a leading technology company or research institution where he can apply his specialized knowledge and research skills to positively impact product development, technological innovation, or policy formulation.

    d.     He began his United States studies approximately two and a half years ago in New York, first entering the United States in August 2021.

    e.     In December 2023 he accepted an FIU offer to enroll in its Computer Science doctoral program, as well as its accompanying offer of a graduate teaching assistantship ("GA"), with a contract set to commence on December 18, 2023, prior to the start of the 2024 spring semester. This GA position included an annual stipend

of $27,510, a tuition waiver, and automatic enrollment in the FIU-sponsored graduate assistant health insurance program.

f. Plaintiff Yin's acceptance of the FIU enrollment and GA offer required a significant commitment, such as incurring expenses in excess of $15,000 for relocating from New York to Miami and signing a 13-month lease in Miami, and a monthly rental obligation under that lease of $2,600.

g. In a letter dated January 9, 2024, FIU informed Plaintiff Yin that his GA offer was deferred until approved pursuant to the new SB 846 process, which would take several months. It also informed him that, until such approval, he would not receive a tuition waiver given that it was contingent on his GA.

h. Pending approval of his GA offer under SB 846, Plaintiff Yin is paying his full tuition costs at FIU out of his own pocket.

38. Plaintiff Guo, who comes from and is a citizen of China, is neither a United States citizen nor an LPR but has permission to be in the United States as the holder of a valid F-1 student visa that the federal government has issued through its immigration system, 8 U.S.C. § 1101(a)(15)(F), which under federal regulation authorizes him to engage in related academic work anywhere in the United States, 8 C.F.R. §§ 214.2(f)(1)(i), (f)(9)–(11).

a. Plaintiff Guo is pursuing his doctoral studies in Materials Engineering at FIU.

b. He is not a member of the Chinese government or the CCP.

c. He aspires to be a university faculty member after completing his doctorate and continue laboratory research.

d. He first entered the United States on December 16, 2023 in furtherance of accepting a September 6, 2023 FIU offer for enrollment in its Department of Mechanical and

Materials Engineering doctoral program, and an October 4, 2023 FIU letter confirming that enrollment offer as well as an accompanying GA offer, with a contract set to commence on December 18, 2023, prior to the start of the 2024 spring semester. This GA position included an annual stipend of $27,510, a tuition waiver, and access to the FIU-sponsored graduate assistant health insurance program.

e.     It was not until Plaintiff Guo had traveled to the United States and Florida that FIU informed him, in a letter dated December 20, 2023, that his GA offer was deferred until approved pursuant to the new SB 846 process, which would take several months. FIU also informed him that, until such approval, he would not receive a tuition waiver given that it was contingent on his GA.

f.     Pending approval of his GA offer under SB 846, Plaintiff Guo is privately paying his full tuition costs at FIU.

39.     The delay in, and potential jeopardy of, Plaintiffs Yin's and Guo's GA contracts and tuition waivers, due solely to SB 846:

a.     threatens them with current and future irreparable educational, training, research, scientific, publication, mentoring, professional, reputational, personal, and emotional harm given that close work with a professor is a cornerstone of their doctoral studies and a GA position is a recognition of academic promise and a testament to the trust placed in them by FIU and its faculty;

b.     limits their exposure to innovative research, scholarly discourse, and publication opportunities;

c.     deprives them of the opportunity to build a network of peers and mentors;

- 16 -

d.  stigmatizes them, leading them to feel a palpable sense of isolation and vulnerability, including from attacks based on their perceived national origin, race, or ethnicity, casting a shadow over their daily life and interactions within the community, with the psychological and emotional toll already constituting a significant and deeply personal loss that affects their ability to study, research, and live freely; and

e.  imposes a significant financial injury on them, including nearly $10,000 per semester in tuition fees to continue their doctoral studies, as well as living expenses estimated at about $21,500 per academic year—expenses totaling about $40,000 per academic year, which the GA offers would cover.

f.  Additionally, for Plaintiff Yin, SB 846:

(i)  is disrupting his and his family's careful plans for his doctoral studies, which have been a focal point of his academic and personal aspirations; and

(ii)  brings the risk of having to prematurely terminate his lease, which would entail further substantial losses.

g.  Additionally, for Plaintiff Guo, SB 846:

(i)  is depriving him of access to a research laboratory, a cornerstone of his doctoral studies; and

(ii)  threatens to delay or eliminate his opportunity to obtain his doctoral degree given that, upon his best information and belief, a graduation requirement is his completion of three or more first-author papers, for which access to a research laboratory is crucial.

40.     Plaintiff Guan is a widely published, award-winning tenured Associate Professor in UF's Food and Resource Economics Department, and is affiliated with UF's Institute of Food and Agricultural Sciences.

a.     He comes from and is a citizen of China, lawfully residing in Florida as an LPR.

b.     He is not a member of the Chinese government or the CCP.

c.     Plaintiff Guan's research focuses upon production economics, labor economics, and agricultural trade and policy, using quantitative methods, with the goal of helping producers to address challenges in these areas at both farm and market levels.

d.     He has received over $3 million in research grants and has collaborated on grants totaling over $30 million.

e.     His work has been presented to the White House, members of the United States House of Representatives and United States Senate[HC(1], the United States Department of Commerce, the Office of the United States Trade Representative, and the United States International Trade Commission, and he has testified in hearings before the latter two entities.

f.     SB 846 has injured Plaintiff Guan because it has severely and adversely affected his ability to recruit and hire the best postdoctoral candidates who have applied to work with him and assist in his research, which has:

(i)     materially slowed his publication productivity and project progress, which threatens existing grant funding as well as grant applications, at an important time when he is subject to a five-year post-tenure review and promotion process, with his loss of access to talented candidates expected

to continue to impact his scholarly work into the future; and

(ii)     had a significant negative impact on his research on citrus, which is the largest agricultural sector in Florida but is facing survival threats due to catastrophic outbreaks of the citrus greening disease (Huanglongbing), which is decimating the industry in Florida and spreading elsewhere in the country.

g.     SB 846 has essentially made it impossible for Plaintiff Guan to hire graduate assistants or postdoctoral candidates from the seven "countries of concern" that the law specifies, including China.

h.     In the last hiring cycle in fall 2023:

(i)     Plaintiff Guan publicized, both nationally and internationally, his academic employment opportunities for graduate and post-graduate students, receiving about 18 applications, of which three had earned degrees in China, two in Iran, and ten in the United States though the applicants were all international students. To the best of his knowledge, no students originally from the United States applied.

(ii)     Plaintiff Guan sought to hire a postdoctoral candidate from China who was the best applicant, but was unsuccessful due to SB 846 and the over four-month delay it caused, and because the candidate eventually decided to accept a competing offer outside of Florida due to SB 846's discriminatory impact against individuals from China.

i.     SB 846's approval process has subjected Plaintiff Guan's postdoctoral candidate to intrusive inquiries, some of which threaten academic freedom.

41.     Finally, SB 846 is having and will have far-reaching stigmatizing effects against individuals from China and of Asian descent who are seeking academic employment in Florida public universities and colleges, including Plaintiffs, as Florida law now presumptively deems them a danger to the United States. This impact is exactly what long discredited—and now understood as shameful—laws like the Chinese Exclusion Act of 1882 did over one hundred and forty years ago.

## V.     CAUSES OF ACTION

### COUNT ONE

**Violation of the United States Constitution's Supremacy
Clause Due to Federal Preemption as a Result of Exclusive
Federal Authority Over Immigration Law and Plaintiffs'
Nonimmigrant Employment Rights
(By All Plaintiffs Against All Defendants)**

42.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

43.     The United States Constitution's Supremacy Clause makes federal law the supreme law of the nation, and states:

> [t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, § 2.

44.     The Supremacy Clause is the foundation for federal preemption doctrine, which mandates that federal law preempts state law in any area over which Congress has expressly or impliedly reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law impermissibly conflicts or interferes with federal law or objectives.

45.     SB 846's state restrictions operate in the shadow of the federal government's exclusive power over immigration law because any foreign principal within the meaning of Fla. Stat. § 288.860(1)(b)(4) must have federal immigration approval to lawfully be present and work in the United States.

46.     In federal statutory terms, every noncitizen is an "alien" under the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States").

47.     Broadly speaking, federal immigration law divides alienage into four categories: LPRs, nonimmigrants, refugees, and undocumented immigrants. *See Dandamudi v. Tisch*, 686 F.3d 66, 75 (2d Cir. 2012) ("nonimmigrant aliens are but one subclass of alien").

48.     SB 846 targets international students who have an interest in entering into academic employment in Florida public universities or colleges. These individuals fall into the nonimmigrant category. *E.g.*, 8 U.S.C. § 1101(a)(15)(F), (J), (M).

49.     Under federal statutory law—and related federal regulations detailed below[15]—nonimmigrants are aliens legally authorized to be in the United States for a temporary period and for a particular limited purpose, such as academic employment, studying, or both, and to do so must qualify for a federal immigration visa authorizing these activities.[16] *See* 8 U.S.C. § 1184(a); *see also* 8 U.S.C. § 1101(a)(15)(F), (J), (M) (must have "a residence in a foreign country" with

---

[15] *See ¶* 53 below.

[16] The U.S. Department of Homeland Security states: "A nonimmigrant visa (NIV) is issued to a person with permanent residence outside the United States but [who] wishes to be in the United States on a temporary basis for tourism, medical treatment, business, temporary work, or study, as examples." *What is the Difference Between an Immigrant Visa vs. Nonimmigrant Visa?*, U.S. CUSTOMS AND BORDER PROTECTION (June 20, 2023), https://help.cbp.gov/s/article/Article-72.

However, "[m]any nonimmigrant aliens are also often eligible to apply for" other legal status that could legally prolong their stay, such as "LPR status." *Dandamudi*, 686 F.3d at 71.

"no intention of abandoning" it).

50.     For example, international students frequently study in United States universities and colleges, including at the graduate level, under authority of an "F-1" visa issued pursuant to 8 U.S.C. § 1101(a)(15)(F). Federal immigration law details the extensive visa application procedures and eligibility for all nonimmigrants, including F-1 visa applicants. *E.g.*, 8 U.S.C. §§ 1201(a)(1)(B), (b), (c)(2), (d); 8 U.S.C. § 1202(c); *see also* 8 C.F.R. § 214.2(f)(1)(i).

51.     Federal immigration law prohibits federal authorities from issuing visas to nonimmigrants such as international students who are deemed threats, *see* 8 U.S.C. § 1201(g), including on national security and foreign policy grounds, 8 U.S.C. §§ 1182(a)(3)(A), (B), (C)(i), (F), and authorizes the revocation of any visa, 8 U.S.C. § 1201(i).

52.     The federal government has an extensive and comprehensive infrastructure in place to satisfy all the requirements of the visa application process. For example, consular officers must adjudicate all nonimmigrant visa applications, and all such applicants are subject to a presumptive consular interview. 8 U.S.C. §§ 1202(d), (h).

53.     Nonimmigrants such as international students who satisfy all applicable visa requirements, and avoid inadmissibility criteria, may obtain federal authorization to engage in related academic work through university, college, and vocational institutional employment anywhere in the United States pursuant to their visa. Under the INA, the Executive Branch is authorized to issue regulations governing the admission of nonimmigrants and the conditions under which they may be in the United States. 8 U.S.C. § 1184(a)(1). Those regulations authorize international students to engage in related academic employment. *E.g.*, 8 C.F.R. §§ 214.2(f)(9)–(12), (j)(1), (m)(14).

54. For example, international students holding F-1 visas commonly engage in the following types of academic employment related to their studies.

a. On-Campus Employment: these positions can include teaching assistantships, research assistantships, or other roles within the university community, generally part-time up to 20 hours per week during the academic year and full-time otherwise. 8 C.F.R. § 214.2(f)(9).

b. Curricular Practical Training: this is an off-campus employment authorization that allows employment directly related to a student's major field of study, such as internships or cooperative education programs, and requires school approval and must be an integral part of the student's curriculum. *Id.* § 214.2(f)(10)(i).

c. Optional Practical Training: this is another type of off-campus employment authorization that allows students to work in a field directly related to their major area of study for up to 12 months (or 36 months for STEM degree holders) during or after completing their academic program, and requires federal approval. *Id.* § 214.2(f)(10)(ii); *see also id.* § 214.2(f)(11)–(12).

55. SB 846 purports to overrule these federal immigration work authorizations through its presumptive bar against such academic employment, which acts as a standing state veto on federal immigration power, and makes available an individualized exemption that nonimmigrants can obtain only by shouldering extra state registration burdens above what federal law requires, which can only be obtained from governing state academic bodies at Florida public universities and colleges, under oversight and supervision from the highest echelons of the Florida state government. *See* Fla. Stat. §§ 288.860(1)(g)–(h), 3(a)–(c); *see also* Fla. Admin. Code R. 6A-14.097(4)–(5); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)–(9).

56. Under the Supremacy Clause and federal preemption doctrine, federal immigration law preempts both SB 846's presumptive or actual prohibition on academic employment that federal immigration law authorizes or would authorize anywhere in the United States, including through the federal government's grant of lawful nonimmigrant status with nationwide employment rights via the federal government's exclusive authority over the nation's immigration system.

**COUNT TWO**

**Violation of the United States Constitution's Supremacy
Clause Due to Federal Preemption as a Result of the
Predominant and Superior Federal Interest in National
Security and Foreign Affairs as Exercised Through Federal
Immigration Power
(By All Plaintiffs Against All Defendants)**

57. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

58. Under the Supremacy Clause, U.S. CONST. art. VI, § 2, federal preemption doctrine, and the predominant and superior federal interests in national security and foreign affairs, federal immigration law preempts both SB 846's presumptive or actual prohibition on academic employment that federal immigration law authorizes or would authorize anywhere in the United States, including through the federal government's grant of lawful nonimmigrant status via the federal government's exclusive authority over the nation's immigration system.

59. Florida's SB 846 identifies seven countries of concern, including China, and provides that any individual who is a "foreign principal" domiciled in one of those countries, but not a United States citizen or LPR, is presumptively prohibited from any academic employment in a Florida public university or college. Fla. Stat. §§ 288.860(1)(a), (b)(4), (1)(g)–(h), 3(a)–(c); *see also* Fla. Admin. Code R. 6A-14.097(1)(e), (g)(4), (4)(a)–(b); Fla. Univ. Bd. Governors Reg.

- 24 -

§§ 9.012(1)(d), (f)(4), (8)(a)–(b).

60.     SB 846 explicitly cites Florida's protection of national security as the primary goal of this presumptive and any actual prohibition, authorizing individualized exemptions that would allow the academic employment only if it "*is not detrimental to the safety or security of the United States or its residents.*" Fla. Stat. §§ 288.860(3)(d), (e) (italics added); *see also* Fla. Admin. Code R. 6A-14.097(4)(c)–(d); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(c)–(d).

61.     Florida's SB 846 expressly makes state educational entities, specifically the state university Board of Governors or the state college Board of Education, responsible for making these national security determinations. *Id.*

62.     At a press conference introducing SB 846, Florida Governor Ron DeSantis emphasized this overarching national security goal, explaining that it "counteract[s] the malign influence of the Chinese Communist Party in the state of Florida" and "combat[s] . . . higher education subterfuge carried out by the CCP and its agents," and that an explicit goal was for Florida to take state leadership "in protecting American interests from foreign threats" as well as to "provide[] a blueprint for other states to do the same."[17]

63.     SB 846's national-security-based presumptive and actual prohibitions on a nonimmigrant's academic employment in Florida public universities and colleges apply even when the federal government has extended nationwide academic employment rights to that nonimmigrant through issuance of a visa under its exclusive immigration power (*see* 8 U.S.C. §§ 1101(a)(15)(F), (J), (M), 1184(a); 8 C.F.R. §§ 214.2(f)(9)–(12), (j)(1), (m)(14)), using a process that includes:

---

[17] *See ¶¶* 24–25 above.

a.      an extensive national security screening under explicit federal statutory criteria, *see* 8 U.S.C. §§ 1182(a)(3)(A)–(B), (F); and

b.      consideration of foreign policy interests under explicit federal statutory criteria, *see id.* § 1182(a)(3)(C)(i).

64.     Federal preemption doctrine renders invalid SB 846's attempt to assert a state veto on national-security grounds over any individual's eligibility for academic employment in Florida public universities and colleges because in this context the federal government manages any national-security and foreign-affairs interests through its exclusive authority to determine that individual's nationwide academic employment rights through its exclusive immigration power.

### COUNT THREE

**Violation of the Right to Equal Protection**
**Under the United States Constitution's**
**14th Amendment and 42 U.S.C. § 1983**
**(By Plaintiffs Yin & Guo Against All Defendants)**

65.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

66.     The Equal Protection Clause of the 14th Amendment to the United States Constitution provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

67.     The Equal Protection Clause protects all persons in the United States, regardless of their race, ethnicity, color, alienage, or national origin, including Plaintiffs.

68.     The Equal Protection Clause prohibits states from denying any person equal protection of the laws based on the person's race, ethnicity, color, alienage, or national origin. This includes laws that appear neutral on their face but are motivated by discriminatory intent and result in discriminatory practices or disparate treatment due to race, ethnicity, color, alienage, or national

- 26 -

origin.

69.     SB 846's presumptive, and any actual, prohibitions on academic employment in Florida public universities and colleges target Plaintiffs Yin and Guo, international doctoral students who come from China. As described above, Florida classifies Plaintiffs Yin and Guo as "foreign principal[s]" domiciled in one of seven "foreign countries of concern"—here, China— and presumptively prohibits their academic employment in Florida public universities and colleges.[18] *See* Fla. Stat. §§ 288.860(1)(a), (b)(4), (g)–(h), 3(a)–(e); Fla. Univ. Bd. Governors Reg. §§ 9.012(1)(d), (f)(4), (8)(a)–(d).

70.     As of the date this Complaint is filed, SB 846 has actually prevented Plaintiffs Yin's and Guo's academic employments in a Florida public university, FIU, injuring them.

71.     The classifications, prohibitions, penalties, and requirements that Plaintiffs Yin and Guo are subject to under Florida's SB 846 are based on their race, ethnicity, color, alienage, and national origin.

72.     Florida's SB 846 violates the Equal Protection Clause on the following grounds:

a.      The law was enacted with the purpose and intent to discriminate against persons based on race, ethnicity, color, alienage, and national origin, in particular Chinese persons, including by using domicile as a proxy for those disallowed classifications.

b.      The law makes impermissible classifications based on race, ethnicity, color, alienage, and national origin that are not justified by a compelling state interest.

c.      The law is not narrowly tailored to meet a compelling state interest.

d.      The law invidiously targets persons based on their race, ethnicity, color, alienage, and national origin, particularly Chinese persons, resulting in discriminatory

---

[18] *See* ¶¶ 36–39 above.

practices and disparate treatment.

e. The law deprives Chinese persons from equal protection of the laws, including laws relating to their fundamental rights.

73. The enactment and enforcement of SB 846's new presumptive and actual prohibitions on academic employment in Florida public universities and colleges have caused and will continue to cause ongoing and irreparable harm to Plaintiffs Yin and Guo. They have and will continue to be discriminated against and subject to disparate treatment based on their race, ethnicity, color, alienage, and national origin simply because they are persons from China within the meaning of SB 846.

74. In implementing and enforcing Florida's SB 846, Defendants are acting under color of state law to deprive Plaintiffs Yin and Guo and other individuals of their rights, privileges and immunities granted under the United States Constitution and federal law.

## COUNT FOUR

**Violation of the Right to Procedural Due Process
Under the United States Constitution's
14th Amendment and 42 U.S.C. § 1983
(By Plaintiffs Yin & Guo Against All Defendants)**

75. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

76. The Due Process Clause of the United States Constitution's 14th Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1.

77. The Due Process Clause's protections apply to all persons in the United States, regardless of their race, ethnicity, color, alienage, and national origin, including Plaintiffs.

- 28 -

78.     The Due Process Clause protects the fundamental rights and liberty interests of all persons in the United States from unreasonable governmental interference through state action, including that which is arbitrary, irrational, oppressive, discriminatory, and egregious. This entails the right to procedural due process, which at a minimum consists of fair notice and an opportunity to be meaningfully heard.

79.     For present purposes, SB 846 uses "domicile[]" as the primary defining trait of each covered "foreign principal" who is subject to its presumptive and actual prohibitions on academic employment in Florida public universities and colleges. *See* Fla. Stat. § 288.860(1)(b)(4); Fla. Admin. Code R. 6A-14.097(1)(g)(4); Fla. Univ. Bd. Governors Reg. § 9.012(1)(f)(4). None of these provisions specifically defines domicile or provides any further guidance about its meaning.

80.     However, for the purposes of implementing and enforcing SB 846, Fla. Stat. § 288.860, and the related Fla. Univ. Bd. Governors Reg. § 9.012, the Board of Governors has elsewhere defined "[d]omicile" as "a physical presence in a foreign country of concern with an intent to return thereto. Intent is demonstrated by an absence of seeking citizenship in the United States."[19]

81.     Florida's SB 846 has injured Plaintiffs Yin and Guo because they have been treated as foreign principals domiciled in China, one of the law's foreign countries of concern, and thus subject to SB 846's presumptive prohibitions on academic employment in Florida public universities. *See* Fla. Stat. §§ 288.860(1)(a), (b)(4), 3(d), (e); Fla. Univ. Bd. Governors Reg. §§ 9.012(1)(d), (f)(4), (8)(c)–(d).

---

[19] Board of Governors, State University System of Florida, *Activity with Foreign Countries of Concern Guidance Document for State University System Institutions* at 1 (Oct. 2023), https://www.flbog.edu/wp-content/uploads/2023/10/Foreign-Influence-Guidance-Document_101923.pdf.

82.    Florida's SB 846 violates the Fourteenth Amendment's Due Process Clause both on its face and as applied to Plaintiffs Yin and Guo.

83.    SB 846's vagueness and lack of adequate guidance empowers and encourages arbitrary and discriminatory enforcement across Florida, including with respect to Plaintiffs Yin and Guo.

84.    SB 846's enactment and enforcement have caused and will continue to cause ongoing and irreparable harm to Plaintiffs Yin and Guo.

85.    In implementing and enforcing SB 846's provisions, Defendants are acting under color of state law to deprive Plaintiffs Yin and Guo and other individuals of their rights, privileges, and immunities granted under the United States Constitution and federal law.

86.    Accordingly, Plaintiffs Yin and Guo seek a declaratory judgment that, under the Board of Governors' definition of domicile and with respect to their academic employment offers at FIU:

a.    they are not domiciled in China within the meaning of SB 846 and related provisions because they do not currently have "a physical presence in a foreign country of concern," including China, given that their physical presence has been and is in the United States since they have been physically residing there for their doctoral studies, and they should be considered domiciled in Florida because that is where they have been and are physically present for their doctoral studies;[20] and

_____

[20] This outcome is consistent with the position Florida is taking in the related SB 264 litigation. *See* fn.5 above. There, and based upon a regulatory definition of "domicile" that also turns upon physical presence—similar to the Board of Governors's definition—Florida is asserting that the individual plaintiffs "are domiciled in Florida, not China" because they are physically present in Florida, even when they have only temporary residence visa status such as under an F-1 visa, the same visa that Plaintiffs Yin and Guo hold. Appellee Rule 28(j) Letter at 1, *Shen v. Simpson*, No. 23-12737 (11th Cir. Mar. 11, 2024), ECF No. 65.

b. their successful application for, and holding of, a valid F-1 visa qualifies as demonstrated intent to be domiciled in the United States because it is sufficient evidence of "seeking citizenship in the United States."

87. Alternately, Plaintiffs Yin and Guo seek a declaratory judgment that, with respect to their academic employment offers at FIU, the Board of Governors' definition of "domicile" is impermissibly vague, indefinite, and ambiguous as applied to them, and fails to provide them sufficient notice about how to avoid SB 846's prohibition on their academic employment at FIU, because:

a. it fails to define "domicile" in common circumstances such as when an individual has a prior physical presence in a foreign country of concern but:

(i) is currently physically present and residing in the United States, as is true for both Plaintiffs Yin and Guo; or

(ii) has either no "intent to return thereto," or an intent to have adopted another country of domicile, or both; and

b. it states that "intent to return" to a foreign country of concern "is demonstrated by an absence of seeking citizenship in the United States" without adequately defining how the factor of seeking United States citizenship can be satisfied, such as the conditions and timing that would be considered adequate.

88. Plaintiffs Yin and Guo also seek injunctive relief against Defendants enforcing Florida's SB 846 against them, and injunctive relief requiring Defendants to compel and/or allow FIU to approve their academic employment offers.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the Court enter judgment in their favor and:

- 31 -

A.      Declare Florida's SB 846 unconstitutional under the United States Constitution's Supremacy Clause and federal preemption law because it impermissibly interferes with nationwide nonimmigrant academic employment rights that the federal government authorizes through its exclusive immigration power.

B.      Declare Florida's SB 846 unconstitutional under the United States Constitution's Supremacy Clause and federal preemption law because it impermissibly intrudes into federal determinations of national security and foreign affairs interests in the nonimmigrant academic employment context, which the federal government manages through its exclusive immigration power.

C.      Declare Florida's SB 846 unconstitutional under the United States Constitution's Fourteenth Amendment because it violates Plaintiffs Yin's and Guo's rights to equal protection.

D.      Declare Florida's SB 846 unconstitutional under the United States Constitution's Fourteenth Amendment because it violates Plaintiffs Yin's and Guo's procedural due process rights, and declare that Plaintiffs Yin and Guo are not subject to SB 846.

E.      Preliminarily and permanently enjoin Defendants from implementing and enforcing Florida's SB 846 against Plaintiffs.

F.      Preliminarily and permanently enjoin Defendants by requiring them to compel and/or allow FIU to approve Plaintiffs Yin's and Guo's academic employment offers, with backdated salary and tuition waivers as if SB 846 had never become law.

G.      Award Plaintiffs reasonable attorneys' fees and their costs of suit.

H.      Grant any other relief this Court deems just and proper.

Respectfully submitted this 25th day of March 2024,

 */s/ Daniel B. Tilley*

- 32 -

Daniel B. Tilley (FBN 102882)
**ACLU FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

Keliang (Clay) Zhu*
Fabio Arcila, Jr.*
**CHINESE AMERICAN LEGAL DEFENSE**
**ALLIANCE**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
(925) 399-5856
czhu@dehengsv.com
farcila@farcilalaw.com

David A. Perez *
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
(206) 359-6767
DPerez@perkinscoie.com

Evelyn Y. Pang *
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036
(212) 262-6900
EPang@perkinscoie.com

Chad B. Henry *
**PERKINS COIE LLP**
700 13th Street NW, Suite 800
Washington, DC 20005
(202) 434-1688
ChadHenry@perkinscoie.com

Saba Chinian *
**PERKINS COIE LLP**
505 Howard Street, Suite 1000
San Francisco, CA 94105
(415) 344-7000
SChinian@perkinscoie.com

*Attorneys for Plaintiffs*

*\* Motion for leave to appear pro hac vice forthcoming*