**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

YIN, et al.,

        *Plaintiffs*,

v.

DIAZ, et al.,

        *Defendants*.

Case No. 1:24-cv-21129-JEM

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs move the Court pursuant to Federal Rule of Civil Procedure 65(a) for a preliminary injunction enjoining Defendants from enforcing a 2023 Florida law, Fla. Stat. § 288.860, which imposes discriminatory prohibitions on academic employment in Florida public universities and colleges based on alienage, national origin, race, and ethnicity.

For the reasons set forth below, Plaintiffs respectfully request that the Court grant their motion and enjoin enforcement of this law's challenged provisions.

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### TABLE OF CONTENTS

I.  INTRODUCTION........................................................................................................... 11

II.  FACTS .......................................................................................................................... 11

    A.    Asserting Discredited National Security Interests, Florida Enacted SB 846 to Presumptively and Actually Prohibit the Academic Employment of Chinese Nonimmigrants in Florida Public Universities and Colleges. ............................. 11

    B.    Exclusive Federal Immigration Power Authorizes the Chinese Nonimmigrant Academic Employment in Florida Public Universities and Colleges that SB 846 Prohibits. ................................................................................................................ 13

    C.    SB 846's Harm to Plaintiffs Due to Its Presumptive Prohibition in Florida of Their Federally Authorized Academic Employment Rights Anywhere in the United States. ............................................................................................................. 15

III.  ARGUMENT .............................................................................................................. 18

    A.    Plaintiffs Are Substantially Likely to Prevail on the Merits of Their Claims that SB 846 Violates Federal Law and Thus Is Invalid. ............................................... 19

        1.    Federal Preemption Invalidates SB 846. ................................................. 19

            (a)    Preemption Due to Exclusive Federal Immigration Power Granting Nationwide Academic Employment Rights to Nonimmigrants ... 19

                (i)    *Constitutional and Field Preemption*................................. *20*
                (ii)    *Conflict Preemption* ........................................................... *21*

            (b)    Preemption Due to Preeminent and Superior Federal National Security and Foreign Affairs Interests ........................................... 22

                (i)    *Federal National Security Interests Preempt SB 846*....... *23*
                (ii)    *Federal Foreign Affairs Interests Preempt SB 846* .......... *24*

        2.    SB 846 Violates the Equal Protection Clause. ........................................... 25

            (a)    SB 846 Is Subject to Strict Scrutiny Because It Facially Discriminates Against Nonimmigrant Alienage Status. ............... 26

            (b)    SB 846 Is Subject to Strict Scrutiny Because It Uses Domicile to Proxy Discriminate Against National Origin and Race................ 27

            (c)    SB 846 Fails Strict Scrutiny and Thus Violates the Equal Protection Clause. ................................................................... 28

            (d)    SB 846's Discriminatory Motivations and Effects Further Demonstrate Its Violation of the Equal Protection Clause. .......... 29

        3.    SB 846 Violates the Due Process Clause Because Its Use of Domicile Is Void for Vagueness.................................................................................... 31

B.  Plaintiffs Are Suffering Irreparable Harm. ............................................................. 34

C.  The Balance of Equities and the Public Interest Both Favor Granting Injunctive Relief to Plaintiffs. ............................................................................................... 35

**IV.  CONCLUSION** .............................................................................................................. **36**

## TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*ABC Charters, Inc. v. Bronson*,
  591 F. Supp. 2d 1272 (S.D. Fla. 2008) ..................................................................36

*Alvarez v. U.S. Immigr. & Customs Enf't*,
  818 F.3d 1194 (11th Cir. 2016) .............................................................................25

*Application of Griffiths*,
  413 U.S. 717 (1972)................................................................................................26

*Arizona v. United States*,
  567 U.S. 387 (2012)........................................................... 14, 19, 21, 22, 24, 25

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)................................................................................................18

*Bernal v. Fainter,*
  467 U.S. 216 (1984)............................................................... 25, 26, 28, 29

*BluestarExpo, Inc. v. Enis*,
  No. 21-cv-20875, 2022 WL 2341168 (S.D. Fla. May 16, 2022) .........................28

*Bush v. Vera*,
  517 U.S. 952 (1996)................................................................................................27

*City of Chicago v. Morales*,
  527 U.S. 41 (1999).................................................................................................33

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)....................................................................... 25, 26

*Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*,
  309 F. Supp. 3d 1216 (S.D. Fla. 2018) ................................................................15

*Connally v. Gen. Constr. Co.*,
  269 U.S. 385 (1926)...............................................................................................34

*Crosby v Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000)...............................................................................................25

*Dandamudi v. Tisch*,
  686 F.3d 66 (2d Cir. 2012) ........................................................ 13, 14, 26, 27, 32

*DeCanas v. Bica*,
  424 U.S. 351 (1976) ........................................................................ 20, 23

*Democratic Exec. Comm. of Fla. v. Lee*,
  915 F.3d 1312 (11th Cir. 2019) ..............................................................36

*EEOC v. Tufts Inst. of Learning*,
  421 F. Supp. 152 (D. Mass. 1975) ..........................................................35

*Elkins v. Moreno*,
  435 U.S. 647 (1978) ..........................................................................19

*Estrada v. Becker*,
  917 F.3d 1298 (11th Cir. 2019) ........................................................ 13, 19, 20, 23

*Garcia-Mir v. Meese*,
  788 F.2d 1446 (11th Cir. 1986) ......................................................... 19, 20, 21, 23

*Gegas v. St. Matthew's Univ. Sch. of Med.*,
  No. 6:22-CV-2299-PGB-EJK, 2023 WL 6294410 (M.D. Fla. Sept. 4, 2023) .....35

*Graham v. Richardson*,
  403 U.S. 365 (1970) ..................................................... 20, 21, 24, 25, 26, 28

*Greater Birmingham Ministries v. Sec'y of State for State of Alabama*,
  992 F.3d 1299 (11th Cir. 2021) ..............................................................29

*Hill v. Colorado*,
  530 U.S. 703 (2000) ........................................................................ 31, 33

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) ........................................................................ 20, 21

*Holt v. Hobbs*,
  574 U.S. 352 (2015) ..........................................................................28

*Johnson v. California*,
  543 U.S. 499 (2005) ..........................................................................27

*Juarrero v. McNayr*,
  157 So. 2d 79 (Fla. 1963) ....................................................................................32

*KH Outdoor, LLC v. City of Trussville*,
  458 F.3d 1261 (11th Cir. 2006) ...........................................................................36

*King v. DePauw Univ.*,
  No. 2:14-cv-70-WTL-DKL, 2014 WL 4197507 (S.D. Ind. Aug. 22, 2014)........35

*League of United Latin Am. Citizens v. Bredesen*,
  500 F.3d 523 (6th Cir. 2007) ...............................................................................26

*LeClerc v. Webb*,
  419 F.3d 405 (5th Cir. 2005) ...............................................................................26

*Maine Prods. Forest Council v. Cormier*,
  51 F.4th 1 (1st Cir. 2022) ............................................................................ 21, 22

*Marrache v. Bacardi U.S.A., Inc.*,
  17 F.4th 1084 (11th Cir. 2021) ............................................................................19

*Matter of Cooke*,
  412 So. 2d 340 (Fla. 2019) ..................................................................................32

*McCormick v. Aderholt*,
  293 F.3d 1254 (11th Cir. 2002) ...........................................................................31

*McWright v. Alexander*,
  982 F.2d 222 (7th Cir. 1992) ...............................................................................27

*Minick v. Minick*,
  149 So. 483 (Fla. 1933)........................................................................................31

*Mississippi Band of Choctaw Indians v. Holyfield*,
  490 U.S. 30 (1989)...............................................................................................31

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  584 U.S. 453 (2018)............................................................................. 19, 21, 22

*N.C. State Conf. of NAACP v. McCrory*,
  831 F.3d 204 (4th Cir. 2016) ...............................................................................29

*Nagaraja v. Comm'r of Revenue*,
 352 N.W.2d 373 (Minn. 1984) ....................................................................32

*Northeastern Fla. Ch. of Ass'n of Gen. Contractors v. City of Jacksonville*,
 896 F.2d 1283 (11th Cir. 1990) .................................................................36

*Nyquist v. Mauclet*,
 432 U.S. 1 (1976) ............................................................................... 13, 19

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*,
 715 F.3d 1268 (11th Cir. 2013) .................................... 18, 24, 25, 34, 35

*Pac. Shores Props., LLC v. City of Newport Beach*,
 730 F.3d 1142 (9th Cir. 2013) ........................................................... 27, 28

*Palmore v. Sidoti*,
 466 U.S. 429 (1984)....................................................................................29

*Pers. Adm'r of Massachusetts v. Feeney*,
 442 U.S. 256 (1979) ...................................................................................29

*Rice v. Cayetano*,
 528 U.S. 495 (2000)....................................................................................27

*Roberts v. U.S. Jaycees*,
 468 U.S. 609 (1984) .............................................................................. 31, 33

*Rodriguez ex rel. Rodriguez v. United States*,
 169 F.3d 1342 (11th Cir. 1999) .................................................................26

*Sailboat Bend Sober Living, LLC v. City of Ft. Lauderdale*,
 46 F.4th 1268 (11th Cir. 2022) ..................................................................29

*Seniors C.L. Ass'n, Inc. v. Kemp*,
 965 F.2d 1030 (11th Cir. 1992) .................................................................31

*Shaw v. Reno*,
 509 U.S. 630 (1993)....................................................................................28

*Silva v. Univ. of N.H.*,
 888 F. Supp. 293 (D.N.H. 1994)................................................................35

*Strawser v. Strange*,
    44 F. Supp. 3d 1206 (S.D. Ala. 2015) ...................................................................36

*Sugarman v. Dougall*,
    413 U.S. 634 (1973) .........................................................................................26

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020) .......................................................................35

*Takahashi v. Fish & Game Comm'n*,
    334 U.S. 410 (1948) ................................................................................. 19, 25

*Toll v. Moreno*,
    458 U.S. 1 (1981) ..................................................................................... 19, 20

*Truax v. Raich*,
    239 U.S. 33 (1915) ............................................................... 19, 20, 21, 25

*U.S. ex rel. Osheroff v. Humana Inc.*,
    776 F.3d 805 (11th Cir. 2015) .........................................................................11

*United States v. Alabama*,
    691 F.3d 1269 (11th Cir. 2012) ............................................................ 20, 21, 24

*United States v. Osorto*,
    995 F.3d 801 (11th Cir. 2021) .........................................................................26

*Van Staden v. St. Martin*,
    664 F.3d 56 (5th Cir. 2011) .............................................................................26

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) .........................................................................30

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ................................................................................. 29, 30

*Weiler v. Weiler*,
    861 So. 2d 472 (Fla. Dist. Ct. App. 2003) .......................................................31

*Wieman v. Updegraff*,
    344 U.S. 183 (1952) .........................................................................................34

*Williams v. Pryor*,
   240 F.3d 944 (11th Cir. 2001) ...............................................................................25

*Yick Wo v. Hopkins*,
   118 U.S. 356 (1886)................................................................................ 25, 28, 29

### Constitutional Provisions

U.S. Const. art. VI, cl. 2 .........................................................................................19

### Statutes

8 U.S.C. § 1101 ...................................................................... 13, 15, 22, 23, 26

8 U.S.C. § 1182 ................................................................................... 14, 24

8 U.S.C. § 1184 ...................................................................... 14, 15, 22, 23

8 U.S.C. § 1201 ................................................................................... 14, 23

8 U.S.C. § 1202 .........................................................................................14

Fla. Stat. § 1008.32 ........................................................................... 13, 34

Fla. Stat. § 1008.322 ................................................................... 13, 21, 34

Fla. Stat. § 222.17 .....................................................................................31

Fla. Stat. § 288.860 ............. 11, 12, 13, 15, 20, 21, 23, 24, 26, 27, 29, 30, 31, 32, 34

Fla. Stat. § 692.201 ...................................................................................32

Fla. Stat. § 692.204 ...................................................................................32

### Other Authorities

Ariel Subourne, *Alienage as a Suspect Class: Nonimmigrants and the Equal
   Protection Clause*, 10 SETON HALL CIR. REV. 199 (2013)....................................13

### Regulations

8 C.F.R. § 214.2 ...................................................................... 15, 22, 23

Fla. Admin. Code R. 12D-7.007 ...................................................................32

Fla. Admin. Code R. 6A-14.097 ................................................. 12, 13, 34

Fla. Admin. Code R. 73C-60.001 ..............................................................32

Fla. Univ. Bd. Governors Reg. § 9.012 .......................................... *passim*

## **Rules**

Fed. R. Evid. 201 ................................................................................ 11, 15

I.      **INTRODUCTION**

Plaintiffs seek injunctive relief in challenging a 2023 Florida statutory enactment, SB 846 (now codified at Fla. Stat. § 288.860, hereinafter referred to as "SB 846"), that violates federal law by presumptively and actually prohibiting the academic employment in Florida public universities and colleges of anyone domiciled in seven foreign countries, including most prominently China. SB 846 injures international students who have traveled to Florida from around the globe in reliance upon enrollment and related academic employment offers, and professors needing to hire these students, who are crucial to the professors' research and publishing. SB 846 is unlawful under federal preemption doctrine as well as constitutional equal protection and due process guarantees.

II.     **FACTS**

A.      **Asserting Discredited National Security Interests, Florida Enacted SB 846 to Presumptively and Actually Prohibit the Academic Employment of Chinese Nonimmigrants in Florida Public Universities and Colleges.**

In May 2023, Florida adopted a set of new state laws "to counteract the malign influence of the Chinese Communist Party [('CCP')] in the state of Florida."[1] SB 846 is one of those laws, implemented to "combat . . . higher education subterfuge carried out by the CCP and its agents" and "to root out Chinese influence in Florida's education system."[2] Florida's explicit goals were to take state leadership "in protecting American interests from foreign threats" as well as to "provide[] a blueprint for other states to do the same."[3]

---

[1] *Governor Ron DeSantis Cracks Down on Communist China*, 46th Governor of Florida (May 8, 2023), https://www.flgov.com/2023/05/08/governor-ron-desantis-cracks-down-on-communist-china/ [hereinafter "*Governor DeSantis Press Release*"]. The court may take judicial notice of this press release. FED. R. EVID. 201(b); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811-12 & n.4 (11th Cir. 2015).
    Another of those new laws from 2023, SB 264, implemented discriminatory prohibitions on land ownership in Florida, targeting the same population as SB 846, and thus similarly disproportionately affects individuals from China. The Eleventh Circuit has enjoined enforcement of SB 264 against several individual plaintiffs pending appeal given the likelihood of their success on the merits. Order of the Court, *Shen v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, No. 23-12737 (11th Cir. Feb. 1, 2024), ECF No. 59 [hereinafter "*Shen v. Simpson*"].
[2] *Governor DeSantis Press Release*, *supra* note 1.
[3] *Id.*

SB 846 designates as a " '[f]oreign principal' " any international student or professor from seven " '[f]oreign countr[ies] of concern' "—China, Russia, Iran, North Korea, Cuba, Syria, and the Venezuelan regime under Nicolás Maduro, Fla. Stat. § 288.860(1)(a); *see also* Fla. Admin. Code R. 6A-14.097(1)(e); Fla. Univ. Bd. Governors Reg. § 9.012(1)(d)[4]—and presumptively bars them from any kind of academic employment in Florida public universities and colleges. *See* Fla. Stat. §§ 288.860(1)(g)-(h), (3)(a)-(c); *see also* Fla. Admin. Code R. 6A-14.097(4)(a)-(b); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(a)-(b). SB 846 uses domicile in a foreign country of concern as a primary defining trait of a foreign principal, which includes:

> [a]ny person who is *domiciled* in a foreign country of concern and is not a citizen or lawful permanent resident of the United States.

Fla. Stat. § 288.860(1)(b)(4) (emphasis added); *see also* Fla. Admin. Code R. 6A-14.097(1)(g)(4); Fla. Univ. Bd. Governors Reg. § 9.012(1)(f)(4). (Any person treated as a foreign principal under § 288.860(1)(b)(4) will also be referred to as a "nonimmigrant" under federal immigration law.[5]) Among the seven foreign countries of concern, SB 846 will most heavily impact Chinese nonimmigrants given that they comprise the vast majority of international students and professors eligible for academic employment in Florida public universities and colleges.[6]

Individualized exemptions from SB 846's presumptive bar to academic employment may be obtained upon application to, and approval from, the State University System of Florida Board of Governors ("Board of Governors"), or the Florida State Board of Education ("Board of Education") that oversees Florida public colleges, in specific cases where a "partnership or agreement" is deemed "to be valuable to students" as well as the state university or college and "*is not detrimental to the safety or security of the United States or its residents*." Fla. Stat. §§ 288.860(3)(d), (e) (emphasis added); *see also* Fla. Admin. Code §§ 6A-14.097(4)(c)-(d); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(c)-(d). Under SB 846, the academic employment is lawful

---

[4] Florida University Board of Governors regulations are available online at https://www.flbog.edu/regulations/active-regulations/.

[5] *See infra* Part II.B.

[6] ECF No. 1 (Complaint) ¶ 29 & n.7 (cited sources subject to judicial notice, *see supra* note 1).

only when such an exemption is granted. In the absence of such an exemption, the academic employment is actually barred.

Annually, the "Board of Governors and the Department of Education" must report to the Florida "Governor, the President of the Senate, and the Speaker of the House of Representatives" data about granted exemptions and cooperation with foreign principals. Fla. Stat. §§ 288.860(3)(f)(1)-(3); *see also* Fla. Admin. Code R. 6A-14.097(5); Fla. Univ. Bd. Governors Reg. § 9.012(9). The Board of Governors and Board of Education may punish any Florida public university or college that violates SB 846's academic employment limitations through the loss of public funding and the loss of competitive grant eligibility. Fla. Stat. §§ 288.860(3)(d)-(e), §§ 1008.32(4)(b)-(c), §§ 1008.322(5)(a)-(b); Fla. Admin. Code R. 6A-14.097(4)(e); Fla. Univ. Bd. Governors Reg. § 9.012(8)(d).

## B. Exclusive Federal Immigration Power Authorizes the Chinese Nonimmigrant Academic Employment in Florida Public Universities and Colleges that SB 846 Prohibits.

SB 846's state requirements operate in the shadow of exclusive federal immigration power, *Nyquist v. Mauclet*, 432 U.S. 1, 10 (1977), because any covered foreign principal must have federal immigration approval to lawfully be present and work in the United States. Under the Immigration and Nationality Act ("INA"), every noncitizen is an "alien." 8 U.S.C. § 1101(a)(3). Broadly speaking, federal immigration law divides alienage into four categories: legal permanent residents ("LPRs"), nonimmigrants, refugees, and undocumented immigrants. *See* Ariel Subourne, Comment, *Alienage as a Suspect Class: Nonimmigrants and the Equal Protection Clause*, 10 SETON HALL CIR. REV. 199, 204-05 (2013); 8 U.S.C. § 1101(a)(42) (refugees); *see also Dandamudi v. Tisch*, 686 F.3d 66, 75 (2d Cir. 2012) ("nonimmigrant aliens are but one subclass of alien").

The international students that SB 846 targets as foreign principals have, or likely will have, nonimmigrant status. *E.g.*, 8 U.S.C. §§ 1101(a)(15)(F), (J), (M) (authorizing various temporary visas); *see also Estrada v. Becker*, 917 F.3d 1298, 1304 (11th Cir. 2019). Nonimmigrants are aliens lawfully admitted into the United States for a particular limited purpose and for a temporary residency period, such as for academic studying and related employment, which requires a federal immigration visa authorizing these activities. *See* 8 U.S.C.

- 13 -

§ 1184(a). "Many nonimmigrant aliens are also often eligible to apply for" other legal statuses that could legally prolong their stay, such as "LPR status." *Dandamudi*, 686 F.3d at 71.

Crucially, federal immigration law prohibits federal authorities from issuing visas to nonimmigrants who are deemed national security threats, *see* 8 U.S.C. § 1201(g), and authorizes the revocation of any visa, *id.* § 1201(i). Federal immigration law details a host of national security threats that render nonimmigrants and other aliens inadmissible, such as:

- espionage or sabotage, 8 U.S.C. § 1182(a)(3)(A);
- violations of laws prohibiting exports of United States technology or sensitive information, *id.*;
- "any other unlawful activity," *id.*;
- any "opposition to, or the control or overthrow of, the Government of the United States by force, violence, or other unlawful means," *id.*; and,
- terrorist involvement, *id.* §§ 1182(a)(3)(B), (F).[7]

Nonimmigrants and other aliens are also inadmissible if their entry "would have potentially serious adverse foreign policy consequences for the United States." *Id.* § 1182(a)(3)(C)(i).

The federal government has an extensive and comprehensive infrastructure in place, staffed by professional, specialized, and well-resourced federal officials, who cooperate among many federal agencies to satisfy all these visa application requirements. *See Arizona v. United States*, 567 U.S. 387, 397 (2012). For instance, consular officers must adjudicate all nonimmigrant visa applications, which are subject to a presumptive consular interview. 8 U.S.C. §§ 1202(d), (h). Additionally, the federal government subjects them to database screenings, including for national security and criminal background purposes, and reviews social media.[8]

_____

[7] Federal immigration law also specifies a multitude of other threats that could impact national security and thus result in inadmissibility, such as health-related conditions, 8 U.S.C. § 1182(a)(1), criminal activity, *id.* §§ 1182(a)(2)(A)-(E), sex trafficking, *id.* § 1182(a)(2)(H), membership in a totalitarian party, *id.* § 1182(a)(3)(D), participation in Nazi persecution, *id.* § 1182(a)(3)(E)(i), participation in genocide, *id.* § 1182(a)(3)(E)(ii), participation in torture or extrajudicial killings, *id.* § 1182(a)(3)(E)(iii), participation in recruiting child soldiers, *id.* § 1182(a)(3)(G), and the likelihood of becoming a public charge, *id.* § 1182(a)(4).

[8] For example, the U.S. Citizenship and Immigration Services ("USCIS") "conducts national security and criminal background clearance checks" on visa applicants. Fraud Detection and National Security Directorate, *FDNS Overview* 9, USCIS.GOV (May 2019), https://www.uscis.gov/sites/default/files/document/presentations/USCIS_OLIA_March_2019_Hill_Conference_FDNS_Overview.pdf. Additionally, USCIS may conduct social media account checks of publicly posted information. *Id.* at 10; *see also Privacy Updates*, USCIS.GOV, https://www.uscis.gov/about-us/organization/directorates-and-program-offices/privacy-updates

The INA authorizes the Executive Branch to issue regulations governing nonimmigrant admission, *id.* § 1184(a)(1), and those regulations authorize international students who receive visas to engage in nationwide employment related to their academic mission. For example, federal regulations authorize nonimmigrant international students holding F-1 visas issued under 8 U.S.C. § 1101(a)(15)(F), such as Plaintiffs Yin and Guo, to engage in numerous types of academic employment related to their studies, such as "On-Campus Employment," 8 C.F.R. § 214.2(f)(9), "Curricular Practical Training," *id.* §§ 214.2(f)(9), (10)(i), and "Optional Practical Training," *id.* § 214.2(f)(10)(ii); *see also id.* § 214.2(f)(11)-(12).

### C.    SB 846's Harm to Plaintiffs Due to Its Presumptive Prohibition in Florida of Their Federally Authorized Academic Employment Rights Anywhere in the United States.

SB 846 purports to protect Florida from CCP threats.[9] Plaintiffs, who lawfully reside in Florida, come from China and are Chinese citizens but they are neither members of the CCP nor the Chinese government. Declaration of Zhipeng Yin ("Yin Decl.") ¶¶ 2-4, 9, 13; Declaration of Zhen Guo ("Guo Decl.") ¶¶ 2-4, 8, 14; Declaration of Zhengfei Guan ("Guan Decl.") ¶¶ 2-4, 8. Neither Plaintiffs Yin nor Guo are United States citizens or LPRs, but they each have permission to be in the United States as holders of a valid F-1 nonimmigrant student visa, which authorizes each of them to engage in related academic work anywhere in the United States, 8 U.S.C. § 1101(a)(15)(F); 8 C.F.R. §§ 214.2(f)(1)(i), (f)(9)-(11); Yin Decl. ¶¶ 6-7, 8-9; Guo Decl. ¶¶ 6-7, 8. Nonetheless, they are currently suffering from SB 846's direct impact because Florida International University ("FIU"), under Defendants' supervision, is denying them academic employment as a result of deeming them domiciled in China within the meaning of Fla. Stat. § 288.860(1)(b)(4). *See* Yin Decl. ¶¶ 13-14; Guo Decl. ¶ 14. SB 846 threatens Plaintiff Guan's academic career as a tenured professor because it is undermining his ability to hire international students to assist in and contribute to his research and publishing. Guan Decl. ¶¶ 8, 12-14.

---

(Aug. 30, 2019) (USCIS engages in searches "of open source or social media information . . . [as] part of our adjudication process"). The court may take judicial notice of these "government publications and website materials." *Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018); FED. R. EVID. 201(b).

    [9] *See supra* notes 1-3 above.

Plaintiff Yin is pursuing his doctoral studies in Computer and Information Sciences at FIU. Yin Decl. ¶ 9. He first entered the United States in August 2021 to study, and while in New York in December 2023 he accepted an FIU offer to enroll in its Computer Science doctoral program, as well as its accompanying offer of a graduate teaching assistantship ("GA"), with the contract set to commence on December 18, 2023, prior to the 2024 spring semester. *Id.* ¶¶ 8-11. This GA position included an annual stipend of $27,510, a tuition waiver, and automatic enrollment in the FIU-sponsored graduate assistant health insurance program. *Id.* ¶ 10.

In a letter dated January 9, 2024, FIU informed Plaintiff Yin that his GA offer was deferred until approved pursuant to the new SB 846 process, which would take several months. *Id.* ¶ 13. It also informed him that, until such approval, he would not receive a tuition waiver given that it was contingent on his GA. *Id.* Pending approval of his GA offer under SB 846, Plaintiff Yin is paying his full FIU tuition costs out of his own pocket. *Id.* ¶ 15.

Plaintiff Guo is pursuing his doctoral studies in Materials Engineering at FIU. Guo Decl. ¶ 8. He first entered the United States on December 16, 2023 in furtherance of accepting a September 6, 2023 FIU offer for enrollment in its Department of Mechanical and Materials Engineering doctoral program, in reliance on an October 4, 2023 FIU letter confirming that enrollment offer as well as an accompanying GA offer, with the contract set to commence on December 18, 2023, prior to the start of the 2024 spring semester. *Id.* ¶¶ 8, 10-11, 14. This GA position included an annual stipend of $27,510, a tuition waiver, and access to FIU-sponsored health insurance. *Id.* ¶ 11.

It was not until Plaintiff Guo had traveled from China and arrived in Florida that FIU informed him, in a letter dated December 20, 2023, that his GA offer was deferred until approved pursuant to the new SB 846 process, which would take several months, and that until such approval he would not receive a tuition waiver given that it was contingent on his GA. *Id.* ¶ 14. Pending approval of his GA offer under SB 846, Plaintiff Guo is privately paying his full FIU tuition costs out of his own pocket. *Id.* ¶ 15.

The delay in, and potential jeopardy of, Plaintiffs Yin's and Guo's GA contracts and tuition waivers, due solely to SB 846, threatens them with current and future irreparable educational, training, research, scientific, publication, mentoring, professional, reputational, personal, and emotional harm given that close work with a professor is a cornerstone of their doctoral studies and a GA position is a recognition of academic promise and a testament to the

trust that FIU and its faculty places in them. Yin Decl. ¶ 18(a); Guo Decl. ¶ 18(a). It limits their exposure to innovative research, scholarly discourse, and publication opportunities, and deprives them of the opportunity to build a network of peers and mentors. Yin Decl. ¶¶ 18(b)-(c); Guo Decl. ¶¶ 18(b)-(c). For Plaintiff Guo, SB 846 is depriving him of access to a research laboratory, a fundamental and crucial part of his doctoral studies. Guo Decl. ¶ 18(d). It threatens to delay or eliminate his opportunity to obtain his doctoral degree given that, upon his best information and belief, a graduation requirement is his completion of three or more first-author papers, for which access to a research laboratory is crucial. *Id.* ¶ 18(e). Further, SB 846 stigmatizes Plaintiffs Yin and Guo, leading them to feel a palpable sense of isolation and vulnerability, including from attacks based on their perceived national origin, race, ethnicity, and alienage status, casting a shadow over their daily life and interactions within the community, with the psychological and emotional toll already constituting a significant and deeply personal loss that affects their ability to study, research, and live freely. Yin Decl. ¶ 18(d); Guo Decl. ¶ 18(f).

SB 846 imposes a significant financial injury on both Plaintiffs Yin and Guo, including nearly $10,000 per semester in tuition fees to continue their doctoral studies, as well as living expenses estimated at about $21,500 per academic year—expenses totaling about $40,000 per academic year, which the GA offers would cover. Yin Decl. ¶ 19; Guo Decl. ¶ 19. Their acceptance of FIU's offers required a significant financial commitment. Plaintiff Yin incurred expenses in excess of $15,000 for relocating from New York to Miami, and signed a 13-month Miami lease with a $2,600 monthly rental obligation. Yin Decl. ¶ 20(a). He may now have to prematurely terminate his lease, which would entail further substantial losses. *Id.* ¶ 20(b).

Plaintiff Guan, who has long been a Florida resident as an LPR, is a widely published, award-winning tenured Associate Professor at the University of Florida ("UF"). Guan Decl. ¶ 8 He is affiliated with UF's Food and Resource Economics Department as well as its Institute of Food and Agricultural Sciences. *Id.* Plaintiff Guan's research focuses upon production economics, labor economics, and agricultural trade and policy, using quantitative methods, with the goal of helping producers to address challenges in these areas at both farm and market levels. *Id.* ¶ 9. He has received over $3 million in research grants and has collaborated on grants totaling over $30 million. *Id.* ¶ 10. His work has been presented to the White House, members of the United States House of Representatives and Senate, and the United States Department of

Commerce, and he has testified before the Office of the United States Trade Representative and the United States International Trade Commission. *Id.* ¶ 11.

SB 846 has essentially made it impossible for Plaintiff Guan to hire graduate assistants or postdoctoral candidates from the seven foreign countries of concern that the law specifies, including China. *Id.* ¶ 13. In the last hiring cycle in fall 2023, he publicized, both nationally and internationally, his academic employment opportunities for graduate students and postdoctoral researchers, receiving about 18 applications, of which three had earned degrees in China, two in Iran, and ten had earned degrees in the United States though they were all international students. *Id.* ¶ 14(a). To the best of his knowledge, no one originally from the United States applied. *Id.* Plaintiff Guan sought to hire a postdoctoral candidate from China who was the best applicant, but was unsuccessful due to SB 846 and the more than four-month delay it caused, and because the candidate eventually decided to accept a competing offer outside of Florida due to SB 846's discriminatory impact against individuals from China. *Id.* ¶ 14(b).

SB 846's negative impact has materially slowed his publication productivity and project progress, which threatens existing grant funding as well as grant applications, all while he is subject to a five-year post-tenure review and promotion process, with his loss of access to talented candidates expected to continue to impact his scholarly work into the future. *Id.* ¶ 12(a). SB 846 also has had a significant negative impact on his research on numerous crops including tomatoes and citrus, the latter of which is the largest agricultural sector in Florida but is facing survival threats due to catastrophic outbreaks of the citrus greening disease (Huanglongbing), which is decimating the industry in Florida and spreading elsewhere. *Id.* ¶ 12(b).

## III.   <u>ARGUMENT</u>

Federal courts have the power to issue injunctive relief against state actors "upon finding the state . . . actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015). Plaintiffs are entitled to preliminary injunctive relief after demonstrating (1) "a substantial likelihood of success on the merits," (2) irreparable harm if relief is not granted, and that (3) the balance of harm between the parties favors Plaintiffs, and (4) relief would serve the public interest. *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1273-74 (11th Cir. 2013) (internal quotations and citations omitted). Plaintiffs satisfy this test.

A.      **Plaintiffs Are Substantially Likely to Prevail on the Merits of Their Claims that SB 846 Violates Federal Law and Thus Is Invalid.**

Substantial likelihood of success on the merits is generally the "most important" injunctive factor. *Garcia-Mir v. Meese*, 788 F.2d 1446, 1453 (11th Cir. 1986). Plaintiffs satisfy it through the strength of their federal preemption, equal protection, and due process claims.

1.      **Federal Preemption Invalidates SB 846.**

Preemption doctrine stems from federal law's supremacy over state law. U.S. CONST. art. VI, cl. 2; *Arizona*, 567 U.S. at 399. Generally, preemption doctrine is divided into three categories: express, field, and conflict. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018); *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1094 (11th Cir. 2021).

(a)      ***Preemption Due to Exclusive Federal Immigration Power Granting Nationwide Academic Employment Rights to Nonimmigrants***

Florida's SB 846 conflicts with exclusive federal power that applies to both the immigration system's registration requirement and its balancing of national interests in authorizing university and college academic employment because the INA "represents 'a comprehensive and complete code covering all aspects of admission of aliens to this country.' " *Toll v. Moreno*, 458 U.S. 1, 13 (1981) (quoting *Elkins v. Moreno*, 435 U.S. 647, 664 (1978)). This extends to residency conditions such as nationwide employment rights, *see Truax v. Raich*, 239 U.S. 33, 42 (1915); *Estrada*, 917 F.3d at 1303; *Garcia-Mir*, 788 F.2d at 1450, which constitute part of the federal government's exclusive jurisdiction and control over immigration law, *Nyquist*, 432 U.S. at 10; *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 416 (1948).

Due to exclusive federal immigration power, foundational preemption principles invalidate Florida's assertion, through SB 846, of a state veto over Plaintiffs Yin's and Guo's federally-authorized, nationwide academic employment right under their F-1 student visas. The Supreme Court has long recognized that state denials of lawfully admitted aliens' federal right to work amounts to denial of their "right to . . . entrance and abode" because "in ordinary cases they cannot live where they cannot work." *Truax*, 239 U.S. at 42. Consequently, exclusive federal power preempts conflicting state measures limiting employment rights granted through the federal immigration process. *See Toll*, 458 U.S. at 11; *Takahashi*, 334 U.S. at 412-14, 419-20;

*Truax*, 239 U.S. at 42; *see also Graham v. Richardson*, 403 U.S. 365, 379-80 (1970); *Garcia-Mir*, 788 F.2d at 1450.

A corollary preemption principle provides that " 'states cannot, inconsistently with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or auxiliary regulations.' " *Graham*, 403 U.S. at 378 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941)). SB 846 advances precisely this prohibited objective:  it seeks to "enforce additional or auxiliary [state] regulations" to satisfy the Board of Governors about a national security issue the federal government has already resolved, but where "Congress has not seen fit to impose any [such additional] burden or restriction." *Graham*, 403 U.S. at 377; *accord Toll*, 458 U.S. at 12-13. Thus, SB 846 is preempted because it impermissibly conflicts with exclusive federal immigration power. *See Graham*, 403 U.S. at 377-80. This result prevails even if Florida believes SB 846 merely " 'complement[s] . . . federal law.' " *Graham*, 403 U.S. at 378 (quoting *Hines*, 312 U.S. at 66-67).

### (i)     *Constitutional and Field Preemption*

Contemporary Supreme Court precedent concerning both constitutional and field preemption invalidate SB 846 given that it imposes an additional state registration requirement upon nonimmigrants above and beyond what federal immigration law requires. SB 846 requires Plaintiffs Yin and Guo to seek an individualized exemption by applying to the Board of Governors. *See* Fla. Stat. §§ 288.860(1)(h), 3(a)-(d); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(a)-(d). Each such application constitutes a state registration requirement, as evidenced by SB 846's mandate that Florida universities and colleges tally exemptions to comply with an annual reporting requirement to Florida's top governmental leaders. *See* Fla. Stat. §§ 288.860(3)(f)(1)-(3); Fla. Univ. Bd. Governors Reg. § 9.012(9); *see also United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012) ("preemption analysis must contemplate the practical result of the state law").

SB 846's imposition of an additional state registration obstacle is invalid under a special form of constitutional preemption the Eleventh Circuit has recognized "[i]n the immigration context," which applies to "any state effort to regulate immigration." *Estrada*, 917 F.3d at 1303. SB 846 violates constitutional preemption because exclusive federal power over immigration includes determining " 'the conditions under which a legal entrant may remain.' " *Id.* (quoting *DeCanas v. Bica*, 424 U.S. 351, 355 (1976)). As the Supreme Court and Eleventh Circuit have

recognized, a crucial condition for remaining in the United States, and any state, is the legal authority to work. *Graham*, 403 U.S. at 379-80; *Truax*, 239 U.S. at 42; *Garcia-Mir*, 788 F.2d at 1450. Florida's imposition of an additional state registration requirement violates constitutional preemption principles because exclusive federal immigration power covers nonimmigrants' conditions for remaining, which include federal legal authorizations to work nationwide.

Field preemption also invalidates SB 846 because "the Federal Government has occupied the field of alien registration" and thus even "parallel" or "complementary state regulation is impermissible." *Arizona*, 567 U.S. at 401; *see also Alabama*, 691 F.3d at 1282. SB 846 depends upon a state registration requirement that constitutes an additional state obstacle Plaintiffs Yin and Guo must satisfy to engage in lawful academic employment despite having already received this work authorization from the federal government through issuance of a federal F-1 visa. Field preemption prevents this outcome because, without exclusive federal control over alien registration, "every State could give itself independent authority . . . diminish[ing] the [Federal Government]'s control over enforcement and detract[ing] from the integrated scheme of regulation created by Congress." *Arizona*, 567 U.S. at 402 (internal quotations and citation omitted); *see also Wiersum*, 785 F.3d at 486. As such, *Arizona*'s conclusion "that, with respect to the subject of alien registration," states are precluded from " 'complement[ing] the federal law, or enforc[ing] additional or auxiliary regulations,' " applies equally to SB 846, and just as Arizona's additional registration requirement was field preempted, the same is true for SB 846. *Arizona*, 567 U.S. at 403 (quoting *Hines*, 312 U.S. at 66-67); *accord Graham*, 403 U.S. at 378. Field preemption applies even more strongly here because SB 846 adds new state law "punishment for noncompliance." *Arizona*, 567 U.S. at 401-02; Fla. Stat. §§ 288.860(3)(d)(2), (e)(2); *see also* Fla. Stat. §§ 1008.322(5)(a)-(b); Fla. Univ. Bd. Governors Reg. § 9.012(8)(d).

### *(ii)    Conflict Preemption*

Recently, the Supreme Court has focused conflict preemption analysis upon two factors, specifically whether: (1) "Congress [has] enact[ed] a law that imposes restrictions or confers rights on private actors," and (2) "a state law confers rights or imposes restrictions that conflict with the federal law." *Murphy*, 584 U.S. at 477; *accord Maine Prods. Forest Council v. Cormier*, 51 F.4th 1, 8 (1st Cir. 2022). Given the facts of this case, under *Murphy* the question as to SB 846 is whether the "federally enacted [F-1 visa] program confers a right on private actors," namely Plaintiffs Yin and Guo, "(either explicitly or implicitly) that conflicts with [S.B. 846's]

restrictions?" *Maine Prods.*, 51 F.4th at 8. If the F-1 student visas they hold confer even an implicit federal right to nationwide academic employment "under specified conditions," and SB 846 conflicts with this federal right, then "the federal law takes precedence and the state law is preempted," especially when such a conflict is "starkly apparent." *Murphy*, 584 U.S. at 477; *Maine Prods.*, 51 F.4th at 10.

Plaintiffs Yin and Guo satisfy *Murphy*'s conflict preemption test. The F-1 student visa program confers on them an explicit right to nationwide academic employment "under specified conditions" extensively detailed through exclusive immigration authority, such as On-Campus Employment, Curricular Practical Training, and Optional Practical Training. 8 U.S.C. § 1101(a)(15)(F), § 1184(a)(1); 8 C.F.R §§ 214.2(f)(1)(i), (f)(9), (f)(10)(i)-(ii), (11)-(12). SB 846 "constitutes a direct and significant obstacle to achieving the [federal F-1 visa] program's clear and manifest objectives," through which "[t]he state [i.e., Florida] law purports to forbid the employment of some of the very same laborers whom federal law authorizes to work after an exacting showing . . . in compliance with elaborate statutory and regulatory criteria." *Maine Prods.*, 51 F.4th at 10. "*It is difficult to envision a more perfect collision of purposes.*" *Id.* (emphasis added). SB 846 can "nullify" Plaintiffs Yin's and Guo's explicit federal right to nationwide academic employment "on a temporary basis when—through a process established by federal law—federal officials have specifically determined that" these opportunities should be available. *Id.* Florida's SB 846 thus constitutes a "a blunt intrusion" on the explicit federal right, which "rudely 'interfere[s] with the careful balance struck by Congress.' " *Id.* (quoting *Arizona*, 567 U.S. at 406). Just as *Maine Products* preempted a state law prohibiting the in-state employment that a federal visa program authorized nationwide, SB 846 "effectively give[s] [Florida] a veto power over the federal [student visa] program['s]" nationwide employment authorizations in universities and colleges pursuant to exclusive federal immigration power, and thus is conflict preempted. *Maine Prods.*, 51 F.4th at 3–4, 11.

### *(b)   Preemption Due to Preeminent and Superior Federal National Security and Foreign Affairs Interests*

Federal preemption also invalidates SB 846 because it unlawfully infringes upon national security and foreign affairs interests that, in the context presented here, are subject to federal control and that the federal government manages through exclusive federal immigration power.

### (i)        *Federal National Security Interests Preempt SB 846*

Preemption invalidates Florida's assertion of greater power than the federal government over Plaintiffs Yin's and Guo's academic employment in Florida public universities and colleges based upon a similar national security concern. Exercising its exclusive federal immigration authority, the federal government granted Plaintiffs Yin and Guo F-1 student visas after a professional, specialized, and well-resourced federal workforce, spanning multiple federal agencies, conducted extensive national security screenings that applied multiple, explicit federal statutory criteria.[10] These F-1 student visas provide federal authorization to engage in related academic employment in any state, including On-Campus Employment, Curricular Practical Training, and Optional Practical Training. 8 U.S.C. § 1101(a)(15)(F), § 1184(a)(1); 8 C.F.R. §§ 214.2(f)(1)(i), (f)(9), (f)(10)(i)-(ii), (11)-(12). The federal government will reject or revoke any visa based upon national security concerns. *See* 8 U.S.C. §§ 1201(g), (i).

Through SB 846, Florida asserts a presumptive state veto over Plaintiffs Yin's and Guo's nationwide federal academic employment right, and authorizes the lay people on its Board of Governors to actually bar the employment if they deem it "detrimental to the safety or security of the United States or its residents." Fla. Stat. § 288.860(3)(d); Fla. Univ. Bd. Governors Reg. § 9.012(8)(c)-(d). SB 846's state veto power applies though neither its statutory language nor related regulations provide any further guidance to the lay people on the Board of Governors as to what constitutes a national security concern or how to assess it, and no indication exists that they have received any training or resources to make this determination.

Florida's attempt in SB 846 to regulate, on national security grounds, nationwide academic employment rights extended through the exclusive federal immigration system is constitutionally preempted because "any state law that 'regulat[es] . . . immigration' is unconstitutional," including state efforts to determine " 'the conditions under which a legal entrant may remain,' " such as any alien's "right to earn [a] living in common callings." *Estrada*, 917 F.3d at 1303 (quoting *DeCanas*, 424 U.S. at 355); *see also Garcia-Mir*, 788 F.2d at 1450. The extensive federal regulation of national security interests in the context of nationwide academic employment rights for international students and professors, within the exclusive federal immigration system, demonstrates that the federal government "has occupied the field"

---

[10] *See supra* notes 7-8 and accompanying text.

and thus SB 846 is field preempted as well, even if Florida's assertion of national security is parallel to or compliments the federal standard. *See Arizona*, 567 U.S. at 401; *Graham*, 403 U.S. at 378; *Alabama*, 691 F.3d at 1282. SB 846 violates "the basic premise of field preemption—that States may not enter, *in any respect*, an area the Federal Government has reserved for itself." *Arizona*, 567 U.S. at 402 (emphasis added). SB 846 also is conflict preempted because it is irreconcilable with the nationwide academic employment rights authorized under the federal government's exclusive immigration system after its consideration of national security interests. *See Arizona*, 567 U.S. at 399; *Wiersum*, 785 F.3d at 486; *Odebrecht*, 715 F.3d at 1274.

### (ii)     *Federal Foreign Affairs Interests Preempt SB 846*

Preemption applies here because the federal government has preeminent and superior authority over foreign affairs, which federal immigration law and policy can easily impact. Federal immigration statutes explicitly require that visa screenings consider whether admission "would have potentially serious adverse foreign policy consequences for the United States." 8 U.S.C. § 1182(a)(3)(C)(i). One of the reasons for the federal government's exclusive authority over immigration is "the National Government's . . . inherent power as sovereign to control and conduct relations with foreign nations," out of recognition that "[i]mmigration policy can affect . . . diplomatic relations for the entire Nation." *Arizona*, 567 U.S. at 394-95; *see also Odebrecht*, 715 F.3d at 1285.

Preemption prevents Florida from interfering, in the manner SB 846 requires, with this federal authority over foreign affairs as exercised through exclusive federal immigration power, including in the academic employment realm at issue here. Through SB 846, Florida forces its way into the nation's diplomatic relations with the seven countries of concern, including China. Fla. Stat. § 288.860(1)(a); Fla. Univ. Bd. Governors Reg. § 9.012(1)(d). However, preemption and exclusive federal power over immigration prevent Florida from doing so because the federal government must have preeminent and superior authority over foreign affairs, which is impacted by immigration policy and alien treatment in the United States and which has consequences for United States nationals in other countries. *Arizona*, 567 U.S. at 395.

Preemption avoids the chaotic outcome that SB 846 threatens, namely that the seven nations it targets, including China, must deal separately with every state government in relation to their domiciliaries in the United States. This SB 846 prospect is of particular concern given Florida's express goals that SB 846 demonstrate its state leadership "in protecting American

interests from foreign threats" and "*provide[] a blueprint for other states to do the same*."[11] "It is fundamental that foreign countries concerned about the status, safety, and security of their nationals in the United States must be able to confer and communicate on this subject with one national sovereign, not the 50 separate States." *Arizona*, 567 U.S. at 395 (citations omitted).

Preemption must apply to protect "[f]ederal governance of immigration and alien status," which "is extensive and complex" in recognition of the intricacy of federal interests at stake, such as with regard to foreign affairs, and which Florida's state intrusion through SB 846 threatens to disrupt. *Id.*; *accord Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1208 (11th Cir. 2016). "Choosing 'the right degree of pressure to employ' " against the seven countries of concern that SB 846 targets, including China, "is a 'federal decision,' not a decision for the State of Florida." *Odebrecht*, 715 F.3d at 1284 (quoting *Crosby v Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000)).

### 2.     SB 846 Violates the Equal Protection Clause.

SB 846 facially targets Plaintiffs Yin and Guo based upon the suspect classification of alienage, and uses the proxy of domicile to discriminate against them based upon national origin and race, using those classifications to encroach on their federal right to work in violation of the Equal Protection Clause. The Fourteenth Amendment "entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham*, 403 U.S. at 371; *see also Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). Plaintiffs Yin and Guo, having been lawfully admitted under federal immigration laws, enjoy an accompanying federal "right to work for a living in the common occupations"—in any state—lest the Fourteenth Amendment become " 'a barren form of words.' " *Takahashi*, 334 U.S. at 415-16 (quoting *Truax*, 239 U.S. at 41). Legislative measures discriminating based upon the suspect classifications of alienage, national origin, and race must pass the most rigorous of tests—strict scrutiny. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985); *Bernal v. Fainter*, 467 U.S. 216, 219-22 & n.5 (1984). Strict scrutiny requires that "the statute be narrowly tailored to achieve a compelling government interest." *Williams v. Pryor*, 240 F.3d 944, 947 (11th Cir. 2001).

---

[11] *See supra* note 3 and accompanying text (emphasis added).

- 25 -

### (a) *SB 846 Is Subject to Strict Scrutiny Because It Facially Discriminates Against Nonimmigrant Alienage Status.*

SB 846 facially discriminates against the federal employment rights of nonimmigrants, a constitutionally protected subclass of aliens. Aliens are "persons" under the Fourteenth Amendment and thus are entitled to equal protection, including with regard to their right to work. *Graham*, 403 U.S. at 375; *Sugarman v. Dougall*, 413 U.S. 634, 641 (1973); *Application of Griffiths*, 413 U.S. 717, 719-20 (1972). This general constitutional protection for aliens extends specifically to the nonimmigrants that SB 846 targets because nonimmigrants are "one subclass" of aliens under federal immigration law. *Dandamudi*, 686 F.3d at 75.

SB 846 facially discriminates on the basis of alienage and thus is subject to strict scrutiny. FIU is discriminating against Plaintiffs Yin and Guo under SB 846 by deeming them domiciled in China,[12] one of SB 846's seven countries of concern, while exempting United States citizens and LPRs, and thus is depriving them of their GA positions based upon their alienage status. Fla. Stat. §§ 288.860(1)(a), (b)(4); Fla. Univ. Bd. Governors Reg. §§ 9.012(1)(d), (f)(4); Yin Decl. ¶¶ 13-14; Guo Decl. ¶ 14. Alienage discrimination is subject to strict scrutiny review. *See, e.g.*, *City of Cleburne*, 473 U.S. at 440; *Bernal*, 467 U.S. at 219; *Graham*, 403 U.S. at 376; *United States v. Osorto*, 995 F.3d 801, 811 (11th Cir. 2021); *Rodriguez ex rel. Rodriguez v. United States*, 169 F.3d 1342, 1347 (11th Cir. 1999).

Strict scrutiny also applies to SB 846 due to its specific discrimination against nonimmigrants. Plaintiffs Yin and Guo have nonimmigrant status under their F-1 student visas. 8 U.S.C. § 1101(a)(15)(F). The Second Circuit applies strict scrutiny to discrimination against nonimmigrants, who by definition are lawfully present. *Dandamudi*, 686 F.3d at 72-74. Though a circuit split exists as to whether nonimmigrant discrimination is subject to strict scrutiny,[13] the Second Circuit correctly reasons that the Supreme Court "has never held that lawfully admitted aliens are outside of *Graham*'s [strict scrutiny] protection" and "has never distinguished between classes of legal resident aliens." *Id.* at 74. Neither has the Eleventh Circuit.

---

[12] The legitimacy of Plaintiffs Yin and Guo being deemed domiciled in China for SB 846 purposes is analyzed in detail below. *See infra* Part III.A.3.

[13] The Fifth and Sixth Circuits extend strict scrutiny to LPRs but not nonimmigrants. *Van Staden v. St. Martin*, 664 F.3d 56, 58-60 (5th Cir. 2011); *LeClerc v. Webb*, 419 F.3d 405, 417-19 (5th Cir. 2005); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 533 (6th Cir. 2007).

This court should join the Second Circuit in applying strict scrutiny to nonimmigrant discrimination. The Second Circuit reasoned that the Supreme Court has "recognized only two exceptions to *Graham*'s rule" that aliens are a suspect class entitled to strict scrutiny:  first, states may "exclude aliens from political and governmental functions as long as the exclusion satisfies a rational basis review," and second, states may have "broader latitude to deny opportunities and benefits to undocumented aliens." *Id.* at 73-74. SB 846 is subject to strict scrutiny because the GA opportunities FIU has denied Plaintiffs Yin and Guo do not involve "political and governmental functions" and they are lawfully present nonimmigrants. *See id.* at 72-74.

### (b) SB 846 Is Subject to Strict Scrutiny Because It Uses Domicile to Proxy Discriminate Against National Origin and Race.

SB 846 facially classifies based upon domicile, *see* Fla. Stat. §§ 288.860(1)(a), (b)(4); Fla. Univ. Bd. Governors Reg. §§ 9.012(1)(d), (f)(4), but as a proxy for national origin and race discrimination in violation of equal protection guarantees. Discriminating against suspect classes by proxy violates the Equal Protection Clause. *See Rice v. Cayetano*, 528 U.S. 495, 514, 516-17 (2000) (recognizing that "[a]ncestry can be a proxy for race," and where "[t]he ancestral inquiry mandated by the State implicates the same grave concerns as a classification specifying a particular race by name" then "[i]t is that proxy"); *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) (discriminatory proxy classifications include "using gray hair as a proxy for age"). Domicile, like ancestry, is a ready proxy for national origin or race discrimination. The "use [of] a technically neutral classification as a proxy to evade the prohibition of intentional discrimination" does not shield a law from equal protection review because "[p]roxy discrimination is a form of facial discrimination." *McWright*, 982 F.2d at 228; *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013). Statutes that discriminate against protected classes by proxy are subject to strict scrutiny. *See Johnson v. California*, 543 U.S. 499, 505, 511 (2005); *Bush v. Vera*, 517 U.S. 952, 968 (1996).

SB 846's use of domicile is a classic form of proxy discrimination. By exempting any United States citizens and LPRs, SB 846 targets all other individuals domiciled in the seven foreign countries of concern, including China. Fla. Stat. §§ 288.860(1)(a), (b)(4); Fla. Univ. Bd. Governors Reg. §§ 9.012(1)(d), (f)(4). In the case of China, though the statute facially uses the neutral term of domicile, in practice it will mostly or only affect those with a national origin in

China,[14] who are almost entirely Asians.[15] Thus, through the proxy of domicile, SB 846 effectively discriminates on the basis of national origin and race, classifications entitled to heightened constitutional protections, because in "proxy discrimination the defendant discriminates against individuals on the basis of criteria that are almost exclusively indicators of membership in the disfavored group." *Graham*, 403 U.S. at 372; *Pac. Shores Props.*, 730 F.3d at 1160 n.23. Courts must be vigilant in examining proxy discrimination because, though the "law itself be fair on its face, and impartial in appearance" it can be applied "with an evil eye and an unequal hand." *Yick Wo*, 118 U.S. at 373-74.

### (c)    SB 846 Fails Strict Scrutiny and Thus Violates the Equal Protection Clause.

SB 846 discriminates on the basis of alienage, nationality, and race, grounds as to which strict scrutiny generally applies. *Graham*, 403 U.S. at 372; *see also Shaw v. Reno*, 509 U.S. 630, 642 (1993) (no extrinsic showing of discriminatory intent required). SB 846 fails to survive strict scrutiny, which requires Florida to show that the legislation is narrowly tailored to serve a compelling state interest through "the least restrictive means available." *Bernal*, 467 U.S. at 219.

SB 846 does not "actually further[]" any compelling interest. *Holt v. Hobbs*, 574 U.S. 352, 364 (2015). Governor DeSantis plainly expressed that SB 846's compelling state interest is to "combat . . . higher education subterfuge carried out by the CCP and its agents" and "to root out Chinese influence in Florida's education system."[16] Florida cannot establish that it is furthering any compelling interest given the lack of evidence that Chinese international students present an espionage threat and when, through SB 846, it delegates a repetitive but greatly simplified national security assessment to the lay people on the Board of Governors despite their lack of any specialized training, knowledge, resources, or guidance to make this determination.[17] Further, Florida cannot establish any compelling, let alone legitimate, interest sufficient to

---

[14] *See supra* note 6 and accompanying text.

[15] China is populated almost entirely by Asians. *See CIA World Factbook*, https://www.cia.gov/the-world-factbook/countries/china/#people-and-society (last updated Apr. 24, 2024); *see BluestarExpo, Inc. v. Enis*, No. 21-cv-20875, 2022 WL 2341168, at *11 n.11 (S.D. Fla. May 16, 2022) (taking judicial notice of CIA World Factbook).

[16] *Governor DeSantis Press Release*, *supra* note 2 and accompanying text.

[17] ECF No. 1 (Complaint) ¶ 33; *see supra* notes 7-8 and accompanying text for a discussion of the extensive national security screening process in the federal immigration regime.

validate SB 846 given the statute's clear discriminatory intent and impact as discussed below.[18] *See Palmore v. Sidoti*, 466 U.S. 429, 432 (1984); *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979); *Yick Wo*, 118 U.S. at 374.

Also fatal is that SB 846's discriminatory restrictions are not narrowly tailored through the least restrictive means available. *Bernal*, 467 U.S. at 219. SB 846 does not limit its prohibitions to CCP members, in line with SB 846's express and purported compelling interest, or to Chinese government officials. Instead, SB 846 is a breathtaking overreach, targeting each and every individual domiciled in seven countries, including China, so long as they are neither a United States citizen nor LPR. Fla. Stat. §§ 288.860(1)(a), (b)(4); Fla. Univ. Bd. Governors Reg. §§ 9.012(1)(d), (f)(4).

SB 846's prohibitions cannot be justified as indispensable to the protection of a national security concern that the federal government has already addressed, and with a specialized competence and resources that Florida cannot match. As such, SB 846 fails to satisfy strict scrutiny and violates the Equal Protection Clause.

### (d)   SB 846's Discriminatory Motivations and Effects Further Demonstrate Its Violation of the Equal Protection Clause.

SB 846 violates the Fourteenth Amendment because discriminatory intent was a "motivating factor" for the law, which will have—and already has had—a discriminatory impact on nonimmigrants from the seven countries of concern, including China. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977). Discriminatory intent need not be proved by a showing that "any member of the [legislature] harbored racial hatred or animosity toward any minority group." *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 233 (4th Cir. 2016). Rather, Plaintiffs need only establish that protected traits played "some role" in SB 846's enactment. *Sailboat Bend Sober Living, LLC v. City of Ft. Lauderdale*, 46 F.4th 1268, 1281 (11th Cir. 2022). The *Arlington Heights* "motivating factor" inquiry focuses upon the statute's historical background, its impact, contemporary statements of key legislators, the foreseeability of disparate impact, knowledge of that impact, and the availability of less discriminatory alternatives. *Greater Birmingham Ministries v. Sec'y of State for State of Alabama*, 992 F.3d 1299, 1322 (11th Cir. 2021).

---

[18] *See infra* Part III.A.3.d.

Both direct and circumstantial evidence demonstrate the discriminatory intent behind SB 846. *See Vill. of Arlington Heights*, 429 U.S. at 266. In enacting SB 846, Florida knew of its overwhelming, if not exclusive, impact on Chinese individuals and intended for it to be enforced in such a way. *See Veasey v. Abbott*, 830 F.3d 216, 236 (5th Cir. 2016) (finding discriminatory intent where legislators "were aware of the likely disproportionate effect of the law on minorities"). Governor DeSantis's own statements demonstrate his and legislators' reliance on harmful stereotypes in drafting and enacting SB 846. His press release asserts that SB 846 was promulgated to "counteract" the CCP's "malign influence" in Florida, and expressly identified its goals of fighting "higher education subterfuge" by "the CCP and its agents" as well as to "root out Chinese influence in Florida's education system."[19] However, instead of targeting CCP members or Chinese government officials, SB 846 expressly applies to *all* individuals domiciled in seven countries, including China, so long as they are not United States citizens or LPRs. Fla. Stat. §§ 288.860(1)(a), (b)(4); Fla. Univ. Bd. Governors Reg. §§ 9.012(1)(d), (f)(4). Florida legislators ignored narrower alternatives that could have addressed Florida's concerns without casting such a wide net over Chinese nonimmigrants, but instead indiscriminately associated individuals of Chinese domicile—mostly if not only Chinese nationals of Asian descent[20]—with their government's policies and actions, effectively declaring that *all* Chinese persons are under suspicion of being CCP agents or cooperators and evidencing Florida's discriminatory intent. *See Veasey*, 830 F.3d at 236.

Such was Florida's intention in enacting SB 846—indeed, legislators passed it "*because of* that disparate impact." *Id.* at 231. SB 846 will have a discriminatory impact on Chinese and Asian nonimmigrants given that they comprise the vast majority of affected international students and professors eligible for actual or prospective academic employment in Florida public universities and colleges.[21] As an immediate consequence, SB 846 has obstructed academic employment opportunities at FIU for Plaintiffs Yin and Guo, causing significant academic, professional, and economic harm. Yin Decl. ¶ 18, Guo Decl. ¶ 18. The two doctoral students now face the prolonged or even permanent loss of academic employment positions authorized under federal immigration law and their F-1 student visas. *Id.* This not only deprives them of the

---

[19] *Governor DeSantis Press Release*, *supra* notes 1-2 and accompanying text.
[20] *See supra* notes 6, 15 and accompanying text.
[21] *See supra* note 6.

substantial scholarly, instructional, and mentoring opportunities associated with such positions but also jeopardizes their ongoing academic endeavors and future professional aspirations. *Id.* Moreover, their loss of employment has resulted in current and substantial loss of income and the attendant comprehensive tuition fee waivers they had been granted in connection with their academic employment offers—reaching an estimated $40,000 in expenses per student, all caused directly by SB 846, not including the lost financial investment in relocating to Florida. Yin Decl. ¶ 19; Guo Decl. ¶ 19. SB 846 also stigmatizes Plaintiffs and others of Chinese and Asian heritage, casting negative suspicions and encouraging animus and attacks towards Asian individuals pursuing academic careers in Florida and creating "a sense of isolation and vulnerability." Yin Decl. ¶ 18(d); Guo Decl. ¶ 18(f).

### 3. SB 846 Violates the Due Process Clause Because Its Use of Domicile Is Void for Vagueness.

SB 846 turns upon domicile but, as implemented, the vague term violates Plaintiffs' due process rights. A statute is void for vagueness in violation of due process when the government fails to "articulate its aims with a reasonable degree of clarity." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984); *see also Seniors C.L. Ass'n, Inc. v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992). A law "can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). SB 846 fails both of these vagueness factors.

The primary factor controlling if SB 846 applies to Plaintiffs Yin and Guo is whether, under that statute, they are domiciled in China. Fla. Stat. §§ 288.860(1)(a), (b)(4); Fla. Univ. Bd. Governors Reg. §§ 9.012(1)(d), (f)(4). Neither SB 846 nor its related regulations define domicile, but Florida common law defines domicile through the ubiquitous two-factor test of physical presence—whether past or present—and intent. *See Minick v. Minick*, 149 So. 483, 487-88 (Fla. 1933) (emphasis added); Fla. Stat. §§ 222.17(1)-(2). Residence exists where one is generally and currently physically present and temporarily making one's home, and is distinct from domicile, which requires both physical presence (past or present) along with intent to make it one's permanent home. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). A person can have only one domicile at a time. *Weiler v. Weiler*, 861 So. 2d 472, 477 (Fla. Dist. Ct. App. 2003).

Under Florida common law, until Plaintiffs Yin and Guo successfully change their nonimmigrant status as F-1 student visa holders, *see Dandamudi*, 686 F.3d at 71, they cannot be domiciled in Florida because they have only temporary residence status under federal immigration law. *Juarrero v. McNayr*, 157 So. 2d 79, 80-81 (Fla. 1963); *Matter of Cooke*, 412 So. 2d 340, 343 n.1 (Fla. 2019).

Florida, however, is arguing *the opposite* in concurrent litigation where it is defending restrictions on real property purchases under Florida's 2023 alien land law (also known as SB 264),[22] despite that it (1) was enacted in conjunction with SB 846,[22] (2) is motivated by the same anti-China animus,[23] and (3) uses *identical* statutory domicile language.[24] Advocating an imprecise domicile definition that fails to account for temporary residence, Florida argues that a student plaintiff in the alien land law litigation is domiciled in Florida despite being only temporarily resident under the same F-1 student visa that Plaintiffs Yin and Guo hold, relying upon a single forty-year-old Minnesota property tax case.[25] Florida is silent about *Juarrero*, *Matter of Cooke*, and a Florida property tax regulation that precludes in Florida the outcome from the Minnesota decision, Fla. Admin. Code R. 12D-7.007(3) ("A person in this country under a temporary visa cannot meet the requirement of permanent residence or home and, therefore, cannot claim homestead exemption."). Florida has also embraced a new alien land law regulation that provides a second domicile definition that continues to elide temporary residence, Fla. Admin. Code R. 73C-60.001(7) (" 'Domicile' means the place where the individual is physically present and intends to remain permanently or indefinitely."), relying upon it to

---

[22] *Governor DeSantis Press Release*, *supra* note 1.

[23] *See id. supra* notes 1-3 and accompanying text.

[24] *Compare* Fla. Stat. § 288.860(1)(b)(4) (" 'Foreign principal' " includes "[a]ny person who is domiciled in a foreign country of concern and is not a citizen or lawful permanent resident of the United States.") *with* Fla. Stat. § 692.201(4)(d) ("Foreign principal" includes "[a]ny person who is domiciled in a foreign country of concern and is not a citizen or lawful permanent resident of the United States."); *see also* Fla. Stat. § 692.204(1)(a)(4) (limiting real property rights of "[a]ny person who is domiciled in the People's Republic of China and who is not a citizen or lawful permanent resident of the United States").

[25] Brief for Appellees at 42-43, *Shen v. Simpson*, No. 23-12737 (11th Cir. Nov. 1, 2023), ECF No. 47 (relying upon *Nagaraja v. Comm'r of Revenue*, 352 N.W.2d 373, 377-78 & n.10 (Minn. 1984) (en banc)).

continue advocating that the alien land law Plaintiffs—even when holding only temporary visas—are domiciled in Florida due to physical presence and their intent.[26]

The Board of Governors has worsened the vagueness problem by issuing an SB 846 "Guidance Document" that provides a third "Domicile" definition—based upon identical statutory text—namely "a physical presence in a foreign country of concern with an intent to return thereto. Intent is demonstrated by an absence of seeking citizenship in the United States."[27] This third definition again elides temporary residence. Further, under its plain meaning it is useless because its definition is satisfied only when an individual is physically present in a foreign country, though it exists to determine the domicile of individuals physically present in Florida. Another vagueness problem concerns intent because the standard that applies to "seeking citizenship in the United States" remains a mystery.

Despite the Guidance Document's domicile definition, FIU is deeming Plaintiffs Yin and Guo domiciled in China though each was physically present in the United States, not in any "foreign country of concern" such as China, immediately before FIU informed them that their GA offers were deferred pending SB 846 approval. Yin Decl. ¶ 13; Guo Decl. ¶ 14. The incongruence between FIU's SB 846 domicile analyses regarding Plaintiffs Yin and Guo, as compared to Florida's domicile analysis in the alien land law litigation based upon identical statutory language as well as temporary visa status—including an F-1 student visa identical to those Plaintiffs Yin and Guo hold—demonstrates that there is no "reasonable degree of clarity" as to who is subject to SB 846's prohibitions. *See Roberts*, 468 U.S. at 629. As such, SB 846 lacks the "minimal guidelines" necessary to determine when the statute's restrictions are triggered. *See City of Chicago v. Morales*, 527 U.S. 41, 60 (1999). If Florida is unable to apply domicile in a consistent and comprehensible manner in the identical statutory contexts of SB 846 and the alien land law, then "people of ordinary intelligence" certainly will have no reasonable opportunity to understand what criteria Florida applies. *See Hill*, 530 U.S. at 732.

---

[26] Appellees Rule 28(j) Letter at 1, *Shen v. Simpson*, No. 23-12737 (11th Cir. Mar. 11, 2024), ECF No. 65.

[27] Board of Governors, State University System of Florida, *Activity with Foreign Countries of Concern Guidance Document for State University System Institutions* at 1 (October 2023), https://www.flbog.edu/wp-content/uploads/2023/10/Foreign-Influence-Guidance-Document_101923.pdf. The court may take judicial notice of this sort of government publication and website material. *See supra* note 8.

SB 846's vagueness as to domicile opens the door to arbitrary and biased enforcement, as Florida already is demonstrating in its alien land law litigation position based upon identical statutory language. The uncertainty concerning SB 846's domicile definition must be a primary concern of any Florida public university or college, including at FIU where Plaintiffs Yin and Guo seek academic employment, due to the possibility of losing funding and grant eligibility for violations of the statute. Fla. Stat. §§ 288.860(3)(d)-(e), § 1008.32(4)(b)-(c), §§ 1008.322(5)(a)-(b); Fla. Admin. Code R. 6A-14.097(4)(e); Fla. Univ. Bd. Governors Reg. § 9.012(8)(d). A related vagueness problem is that Florida's public university and college employers will be wary of hiring any F-1 visa holders from a covered foreign country given uncertainty as to domicile because they "must necessarily guess at its meaning and differ as to its application." *See Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

Thus, SB 846 is void for vagueness due to uncertainty about domicile. A government failure to provide reasonable notice of legal standards "violates the first essential of due process of law," *Connally*, 269 U.S. at 391, and this constitutional guarantee extends to due process interests in employment rights, *Wieman v. Updegraff*, 344 U.S. 183 (1952) (invalidating loyalty oath condition to employment).

### B.    Plaintiffs Are Suffering Irreparable Harm.

It is settled law that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. The injury must be actual and imminent, not remote or speculative." *Odebrecht*, 715 F.3d at 1288 (internal quotations and citations omitted).

Since SB 846's enactment, Plaintiffs' injuries are actual and imminent. SB 846 has potentially jeopardized Plaintiffs Yin's and Guo's current doctoral education and future employment prospects by harming their educational, training, research, scientific, publication, and mentoring interests. Yin Decl. ¶¶ 18(a)-(c); Guo Decl. ¶¶ 18(a)-(c). SB 846 is depriving Plaintiff Guo of access to a research laboratory, a cornerstone of his doctoral studies, which inhibits his publication opportunities to the extent of threatening his graduation. Guo Decl. ¶¶ 18(d)-(e). SB 846 injures Plaintiffs Yin and Guo by stigmatizing them and their community, branding them as national security threats so they now feel a sense of isolation and vulnerability from attacks based on their perceived national origin, race, or ethnicity. Yin Decl. ¶ 18(d); Guo Decl. ¶ 18(f). This stigma has cast a shadow over their daily lives and caused a significant psychological and emotional toll. *Id*. Such possibly forced delay in graduation and stigma

demonstrates irreparable harm. *See Gegas v. St. Matthew's Univ. Sch. of Med.*, No. 6:22-CV-2299-PGB-EJK, 2023 WL 6294410, at *5 (M.D. Fla. Sept. 4, 2023); *King v. DePauw Univ.*, No. 2:14-cv-70-WTL-DKL, 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014).

SB 846 has adversely affected Plaintiff Guan's scholarly work by undermining his ability to hire the best candidates to assist him. Guan Decl. ¶ 12. During the fall 2023 hiring cycle, Professor Guan extended an offer to his best applicant, a postdoctoral candidate from China, who rejected it due to SB 846's discriminatory targeting of Chinese individuals and a four-month delay the law caused. *Id.* ¶ 14(b). This is threatening existing grant funding and grant applications at a time when Plaintiff Guan is subject to a five-year post-tenure review and promotion process. *Id.* ¶ 12(a). Harms to financial and tenure interests in an academic position constitute irreparable harm. *Silva v. Univ. of N.H.*, 888 F. Supp. 293, 325-26 (D.N.H. 1994); *EEOC v. Tufts Inst. of Learning*, 421 F. Supp. 152, 165 (D. Mass. 1975). His inability to recruit high-caliber candidates also has had a significant negative impact on Plaintiff Guan's research on citrus, which is the largest agricultural sector in Florida but is facing survival threats due to catastrophic outbreaks of the citrus greening disease (Huanglongbing), which is decimating the industry in Florida and spreading elsewhere in the country. Guan Decl. ¶ 12(b). Thus, SB 846 is causing irreparable harm not only to Plaintiff Guan but to Florida as well.

Further, due to losing their GA salaries and tuition waivers, Plaintiffs Yin and Guo are suffering significant financial injury totaling around $40,000 each per academic year. Yin Decl. ¶ 19; Guo Decl. ¶ 19. They may be forced to leave FIU and Florida to continue their doctoral studies elsewhere, which would cause Plaintiff Yin even more financial harm such an investment loss in New York-to-Miami relocation expenses exceeding $15,000 and losses from prematurely terminating his thirteen-month Miami lease having a $2,600 monthly rental obligation. Yin Decl. ¶ 20; Guo Decl. ¶ 18(e). So long as SB 846 is enforced, Plaintiffs Yin and Guo will qualify for injunctive relief because "the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable." *Odebrecht*, 715 F.3d at 1289.

### C.     The Balance of Equities and the Public Interest Both Favor Granting Injunctive Relief to Plaintiffs.

Both the balance of equities and the public interest weigh heavily in favor of enjoining SB 846. Because the government—Florida—is the party opposing injunctive relief, "its interest and harm merge with the public interest," *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020),

such that the third and fourth injunctive factors merge into balancing Plaintiffs' interest against the public interest.

Plaintiffs will continue to be subjected to constitutional injury, unwarranted stigma, and significant professional and financial harms if SB 846 is not enjoined. In contrast, Defendants would face no appreciable injury from the issuance of an injunction that simply halts enforcement of a historically ugly, discriminatory, and suspect law pending the court's resolution of important constitutional and statutory matters. As the Eleventh Circuit has recognized, the government has no interest in enforcing an unconstitutional law. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Rather, "the public interest is served when constitutional rights are protected." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019); *accord Strawser v. Strange*, 44 F. Supp. 3d 1206, 1210 (S.D. Ala. 2015).

Pending merits adjudication, neither Florida nor anyone else suffers harm from the preservation of the status quo,[28] under which persons hailing from China have operated on equal footing with all other participants in respect to academic employment opportunities at Florida public universities and colleges. *Northeastern Fla. Ch. of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990). One of Florida's explicit goals is for other states and local governments to replicate SB 846,[29] which would substantially magnify the law's harmful effects. *See ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1297 (S.D. Fla. 2008). SB 846 has already inflicted a damaging, unconstitutional, and irreparable injury upon Plaintiffs based solely on their alienage, country of origin, and race, while jeopardizing their academic and professional futures. These injustices should not be permitted to continue, and possibly spread across the nation, before this court can render its decision on the merits. The equities here support issuing injunctive relief to halt this discriminatory and unconstitutional law.

## IV.   <u>CONCLUSION</u>

For the all the reasons explained above, Plaintiffs respectfully ask this court to enjoin SB 846's enforcement and grant all the relief available at this time that Plaintiffs request in their Complaint.

---

[28] *See* ECF No. 1 (Complaint) ¶ 33 (lack of evidence Chinese international students present an espionage threat).

[29] *See supra* note 3 and accompanying text.

Respectfully submitted this 29th day of April 2024,

/s/ _Daniel Boaz Tilley_

Daniel Boaz Tilley (FBN 102882)
**ACLU FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

Keliang (Clay) Zhu*
**CHINESE AMERICAN LEGAL DEFENSE ALLIANCE**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
(925) 399-5856
czhu@dehengsv.com

Fabio Arcila, Jr.*
**CHINESE AMERICAN LEGAL DEFENSE ALLIANCE**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
(925) 399-5856
farcila@farcilalaw.com

David A. Perez*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-6767
dperez@perkinscoie.com

Evelyn Y. Pang*
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036
(212) 261-6875
epang@perkinscoie.com

Chad B. Henry*
**PERKINS COIE LLP**
700 13th Street NW, Suite 800
Washington, DC 20005
(202) 434-1688
chadhenry@perkinscoie.com

Saba Chinian*
**PERKINS COIE LLP**
505 Howard Street, Suite 1000
San Francisco, CA 94105
(415) 954-3252
schinian@perkinscoie.com

*Attorneys for Plaintiffs*

*\* Admitted pro hac vice*