IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Y<small>IN</small>, et al.,

    *Plaintiffs*,

v.

D<small>IAZ</small>, et al.,

    *Defendants*.

Case No. 1:24-cv-21129-JEM

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 5

II.  ARGUMENT ................................................................................................................. 5

    A.   Plaintiffs Have Standing ..................................................................................... 5

    B.   SB 846 Is Invalid Due to Federal Preemption. ................................................... 7

        1.   *SB 846 Is Conflict Preempted Due to Exclusive Immigration Power So States May Not Complement or Conflict with Federal Jurisdiction.*......................................... 7

        2.   *Field Preemption Applicable to Federal Alien Registration, and Constitutional Preemption, Prohibit State Employment Regulation of National Security Through SB 846.* ........................................................................................................... 10

        3.   *SB 846 Is Preempted Based upon National Foreign Affairs Interests, and Preemption Trumps State Police and Spending Powers.*....................................... 13

    C.   SB 846 Violates Equal Protection...................................................................... 14

    D.   SB 846 Is Void for Vagueness Under Due Process. .......................................... 17

III. CONCLUSION............................................................................................................. 17

# **TABLE OF AUTHORITIES**

*Page*

**Cases**

*Arizona v. United States*,
  567 U.S. 387 (2012) .................................................................................................... 12, 13

*Bernal v. Fainter*,
  467 U.S. 216 (1984) ............................................................................................................ 15

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ............................................................................................................ 15

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ............................................................................................................ 14

*Dandamudi v. Tisch*,
  686 F.3d 66 (2d Cir. 2012) ............................................................................................ 15, 16

*DeCanas v. Bica*,
  424 U.S. 351 (1976) ............................................................................................................ 11

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
  438 U.S. 59 (1978) ................................................................................................................ 6

*Estrada v. Becker*,
  917 F.3d 1298 (11th Cir. 2019) ................................................................... 10, 12, 13, 15, 16

*Fisher v. Univ. of Tex. at Austin*,
  570 U.S. 297 (2013) ............................................................................................................ 16

*Foley v. Connelie*,
  435 U.S. 291 (1978) ............................................................................................................ 15

*Graham v. Richardson*,
  403 U.S. 365 (1971) ...................................................................................................... 15, 16

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) ........................................................................................................ 12, 13

*Kansas v. Garcia*,
  589 U.S. 191 (2020) ............................................................................................................ 11

*Lewis v. Governor of Alabama*,
  944 F.3d 1287 (11th Cir. 2019) ............................................................................................ 6

*Maine Prods. Forest Council v. Cormier*,
  51 F.4th 1 (1st Cir. 2022) .................................................................................................. 8, 9

*McWright v. Alexander*,
  982 F.2d 222 (7th Cir. 1992) .............................................................................................. 16

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  584 U.S. 453 (2018) .............................................................................................................. 8

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013) .......................................................................................... 14

*Pac. Shores Props., LLC v. City of Newport Beach*,
  730 F.3d 1142 (9th Cir. 2013) ............................................................................................ 16

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) .................................................................................................................. 14
*Plyler v. Doe*,
  457 U.S. 202 (1982) .............................................................................................................. 16
*Rice v. Cayetano*,
  528 U.S. 495 (2000) .............................................................................................................. 16
*Rodriguez ex rel. Rodriguez v. United States*,
  169 F.3d 1342 (11th Cir. 1999) ............................................................................................ 15
*Rodriguez v. Procter & Gamble Co.*,
  465 F. Supp. 3d 1301 (S.D. Fla. 2020) ........................................................................... 15, 16
*Takahashi v. Fish & Game Comm'n*,
  334 U.S. 410 (1948) .............................................................................................................. 11
*Truax v. Raich*,
  239 U.S. 33 (1915) ................................................................................................................ 11
*United States v. Alabama*,
  691 F.3d 1269 (11th Cir. 2012) ............................................................................................ 12
*United States v. Osorto*,
  995 F.3d 801 (11th Cir. 2021) .............................................................................................. 15
*Walters v. Fast AC, LLC*,
  60 F.4th 642 (11th Cir. 2023) ................................................................................................. 5

**Statutes**

8 U.S.C. § 1621 .......................................................................................................................... 10
Fla. Stat. § 1010.35 ...................................................................................................................... 6
Fla. Stat. § 286.101 ...................................................................................................................... 6
Fla. Stat. § 288.860 .............................................................................................................. 12, 14
HB 379, Reg. Sess. (Ala. 2023) ................................................................................................. 16

**Regulations**

Fla. Univ. Bd. Governors Reg. § 9.012 ................................................................................ 12, 14

**Other Authorities**

142 Cong. Rec. S8395-04, S8396, 1996 WL 407921 ................................................................ 10

I.     **INTRODUCTION**

The defenses raised against Plaintiffs' preliminary injunction motion are unavailing. Plaintiffs have standing. The preemption defenses fail because they either misrepresent the facts, the law, or Plaintiffs' position, elide controlling federal preemption principles, or rely upon inapposite jurisprudence. For example, contrary to what the defense suggests, *see* Resp. Br. (ECF No. 26) at 12–13, Plaintiffs Yin and Guo do not claim an employment "right" in the sense that Florida International University ("FIU") is required to hire them. Rather, they argue that no state may reject the federal government's determination that they present no national security risk because that determination lies within exclusive federal immigration and alien registration power, which states must honor in deciding whether to academically employ Plaintiffs Yin and Guo pursuant to their F-1 student visas. Except for admitting that preemption exists and can be explicit or implicit, *id.* at 10, not once does the defense acknowledge or substantively grapple with the contours of exclusive federal immigration power or preemption principles. In this context, the defense's assertion of states' rights and the benefits of parallel and harmonious state efforts simply ignores controlling preemption principles and thus must be rejected. The defenses raised against Plaintiffs' equal protection and vagueness claim similarly lack merit.

II.    **ARGUMENT**

   A.     **Plaintiffs Have Standing.**

Plaintiffs have standing because SB 846 is harming them, and only injunctive relief against Defendants, and not against FIU or the University of Florida ("UF"), can redress those injuries. Defendants wrongly contend that Plaintiffs' injuries are traceable only to the universities because the latter did not submit SB 846 exemption requests. *Id.* at 8–9. Traceability is a "less stringent" standard than tort law proximate cause, and "even harms that flow indirectly from the action in question can be . . . fairly traceable to that action for standing purposes." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (internal quotations and citations omitted). "*[F]actual* causation . . . between [a plaintiff's] injuries and the defendant's misconduct" suffices. *Id.*

SB 846's harms are factually caused and thus traceable to Defendants who are charged with the power to enforce SB 846. As the defense concedes, Defendants may impose sanctions on universities for failing to comply with SB 846. ECF No. 26 at 9. Further, Defendants are responsible for imposing arduous and time-consuming administrative burdens to request an

SB 846 exemption, which first requires a risk assessment by the Research, Integrity, Security & Compliance ("RISC") group, *see* Fla. Stat. §§ 286.101, 1010.35, and Human Resources.[1] Once completed, the university's general counsel must then review the request and determine if the Board of Governor's approval is necessary, followed by submitting the request for approval to the board of trustees, typically weeks in advance, and only after all of this has occurred is the applicant permitted to submit a request to the Board of Governors, which must be submitted four weeks ahead of its next meeting.[2] Consequently, it takes several months to submit an SB 846 exemption request to the Board of Governors, and even at this point several more months may pass before an answer is available from it.[3] These burdensome and time-consuming requirements for which Defendants are responsible, along with the uncertainty around ultimate approval, have factually caused Plaintiffs' injuries.

Only enjoining Defendants would provide redressability. Even if Plaintiffs successfully sued FIU or UF, they would remain in the same position because the universities would still have to follow the SB 846 pre-approval process that Defendants mandate. *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1301 (11th Cir. 2019) ("[I]t must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly.") (internal quotations and citations omitted). Plaintiffs' injuries are redressed only by freeing the universities from proceeding through Defendants' SB 846 administrative gauntlet. *Id.* (The question is "whether a decision in a plaintiff's favor would 'significant[ly] increase . . . the likelihood' that [they] 'would obtain relief that directly redresses the injury' that [they] claim[] to have suffered.") (citation omitted); *see also Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978) ("substantial likelihood" of

---

[1] *See infra* notes 5-6 and accompanying text; *see also* Policy from University of Southern Florida, *How to Request a Board of Governors Exemption for Proposed Activities with Foreign Countries of Concern or Foreign Principals ("FCOC Activities")* at 6–11, https://usf.app.box.com/s/5vuwtvzksq5rlskcykcoegt4cnk2fb24 (last visited May 28, 2024).

[2] Board of Governors, State University System of Florida, *Activity with Foreign Countries of Concern Guidance Document for State University System Institutions* at 4 (Oct. 2023), https://www.flbog.edu/wp-content/uploads/2023/10/Foreign-Influence-Guidance-Document_101923.pdf.

[3] State University System of Florida, *Upcoming Meetings*, https://www.flbog.edu/board/upcoming-meeting/ (last visited May 28, 2024) (noting next Board of Governors meetings are June 27, September 18, and October 29, 2024, and January 29, 2025).

redressability is sufficient).

As for Plaintiff Guan's injuries, they do not result from a "speculative chain of possibilities," and he faces no prudential standing issues, as Defendants suggest. ECF No. 26 at 9–10. Contrary to Defendants' assertions, *id.* at 10, the record includes his averments that his best doctoral candidate was from China—which rendered that candidate subject to SB 846—and that the candidate withdrew due to SB 846.[4] In any event, in response to Defendants' arguments, Plaintiff Guan is filing a second declaration in support of this reply brief that provides further factual detail concerning his SB 846 injuries, involving his unsuccessful attempt to hire this China-domiciled candidate after a months-long delay in seeking authorization from RISC and Human Resources to make an employment offer, which included intensive and extended RISC inquiries, the impact upon his grant funding, and the candidate's withdrawal due to concern about SB 846.[5] Absent injunctive relief against Defendants, they will continue to bind him and UF to the burdensome SB 846 process that is injuring him. No prudential standing defense exists because Plaintiff Guan is suing based on the injuries he is suffering, which includes research delays, wasted grant funds, lost grant opportunities, and publication delays.[6] Professor Guan is not seeking to vindicate a third-party claim of the candidate who withdrew, but rather seeks relief from Defendants' actions that have harmed his academic activities.

**B.      SB 846 Is Invalid Due to Federal Preemption.**

In the context of SB 846, the defense's core arguments against preemption are that (1) Florida may complement federal law through harmonious state regulation of national security interests in employment, and impose a state veto over federal determinations of that interest, because (2) a clear distinction exists between federal immigration and registration power and state employment regulation. The defense's positions are incorrect.

**1.      *SB 846 Is Conflict Preempted Due to Exclusive Immigration Power So States May Not Complement or Conflict with Federal Jurisdiction.***

The heart of the preemption dispute here is whether "the federal security screening conducted during the visa application process is 'exclusive' in that it vests in the recipient a right

---

[4] Declaration of Zhengfei Guan (ECF No. 20-1) [hereinafter "Guan Decl."] ¶ 14(b).

[5] Second Declaration of Zhengfei Guan (filed concurrently) [hereinafter "Guan 2d Decl."] ¶¶ 2–4 & Ex. A.

[6] Guan Decl. (ECF No. 20-1) ¶ 12.

to be free of further [national security] scrutiny at the state level." Resp. Br. at 16 (ECF No. 26). The defense's contrary arguments ignore the exclusivity of federal immigration power and that a primary justification for preemption is that additional and—most pertinent here—repetitive state efforts can do more harm than good; in such cases, one authority must govern to delicately balance the complex web of important interests at stake, and the Supremacy Clause demands that this authority be the federal government. Plf. Br. (ECF No. 20) at 19–25.

At a minimum, SB 846 is conflict preempted. A clear conflict exists when the federal government determines under its exclusive immigration power that an F-1 visa applicant poses no national security threat, while Florida disagrees. The defense admits that SB 846 "prohibits a person from working for the State only if the person is a national security threat." ECF No. 26 at 14–15. But the federal government has already made that determination under its exclusive federal immigration power, and thus at a minimum the Supreme Court's *Murphy* test, as exemplified in *Maine Products*, results in conflict preemption. Plf. Br. (ECF No. 20) at 21–22.

To avoid *Maine Products*, the defense misrepresents the facts here. The defense correctly describes the *Maine Products* "problem [as] that the state law . . . *interfer[ed]* with the discretion of the employer to decide whether to hire the worker," but then incorrectly claims that the SB 846 "situation is the opposite, as Florida's law *fosters* the employer's hiring discretion." ECF No. 26 at 13 (emphasis added). This defense contention misrepresents the facts, by treating the employers here as equivalent to the state for all relevant purposes, creating a false distinction. *See id.* ("The F-1 visa program at issue here effectuates *the choices of universities, meaning*—in the case of public universities—*choices made by the State*.") (emphasis added). This is incorrect.

In their capacity as employers here, FIU (as to Plaintiffs Yin and Guo) and Plaintiff Guan (as to his desired post-doctoral candidate) are factually distinct from Florida despite being affiliated with it. The record shows that FIU *wanted* to hire Plaintiffs Yin and Guo, as evidenced by the GA offers it actually extended them, and that Plaintiff Guan *wanted* to hire his best post-doctoral candidate, as evidenced by his employment offer and months-long attempt to get SB 846 authorization—and indeed that they would have done so but-for SB 846.[7] Florida, through SB 846 and its delegation of authority to the Board of Governors that oversees and supervises Florida public universities, *interfered* with these employers' discretion to hire.

---

[7] *See* Declaration of Zhipeng Yin (ECF No. 20-11) ¶ 10; Declaration of Zhen Guo (ECF No. 20-2) ¶¶ 9–12; Guan 2d Decl. ¶¶ 2–4 & Ex. A; Guan Decl. (ECF No. 20-1) ¶¶ 13–14.

Thus, *Maine Products* is directly on-point. Just as the Maine law was conflict preempted due to interfering with employer discretion-to-hire, the same is true for SB 846. The latter did not "foster the employer's hiring discretion" any more than did the Maine law given that each state law conflicted with exclusive federal immigration power by *prohibiting* employers from hiring candidates authorized for nationwide employment under temporary visas.

Because, at a minimum, conflict preemption applies, then complementary, parallel, or "perfectly harmonious" state regulation is barred. Plf. Br. (ECF No. 20) at 20–21, 23–24; Resp. Br. (ECF No. 26) at 16. Defendants baldly assert, with no legal authority, that "Congress is well aware that federal immigration officials cannot identify every possible threat" and that "nothing . . . suggests Congress was under the unrealistic impression that federal immigration officials would be the nation's only line of defense."[8] ECF No. 26 at 16. The controlling standard is not what Defendants believe about Congress. Rather, it is the implicit preemption principles upon which Plaintiffs rely. These require examining what Congress has actually done and whether those statutory and related regulatory provisions lead to preemption in light of the extensive, detailed, and exclusive federal immigration regime and governmental infrastructure focused upon national security. The defense fails to substantively grapple with those standards,[9] but they require implicit preemption. Plf. Br. (ECF No. 20) at 19–25.

It is fanciful to assert that Florida offers an additional "line of defense." Resp. Br. at 16 (ECF No. 26). Florida certainly does not do so by delegating national security determinations to the lay people on the Board of Governors. They have no basis, experience, training, expertise, specialization, or resources to make a national security determination. Florida does not explain—because it cannot—how Defendant Ashley Bell Barnett, as a "philanthropist" and "education advocate," has any competency to make national security assessments.[10] For this reason, and

---

[8] Arguing for state involvement, defendants misstate the facts, minimizing the scope of federal immigration national security screenings by acknowledging only consular review, Resp. Br. at 16 (ECF No. 26), but these screenings are much more extensive and apply a rigorousness and specialized resources that Florida cannot match. Plf. Br. (ECF No. 20) at 14–15 & nn.7–8.

[9] The defense nonsensically asserts that exclusive federal immigration national security screenings have "no basis in the statute." Resp. Br. at 16 (ECF No. 26). This apparently refers to SB 846, but a state statute cannot grant federal exclusivity. Further, the preemption that protects exclusivity can be implicit, as the defense concedes. *Id.* at 10.

[10] State University System of Florida, *Ashley Bell Barnett*,

because the defense concedes that the relevant national security risks stem from individuals' backgrounds and home country leverage sources while omitting any mention of specific employment positions, ECF No. 26 at 5, the defense argument that the Board of Governors is "in the best position to assess the risks associated with specific research positions," *id.* at 17, lacks merit.

Finally, the PRWORA defense argument is an incorrect and inapposite attempt to muddy the waters and obfuscate the issues. First, as a congressional statute, PRWORA must give way to the constitutionally-derived Supremacy Clause doctrine of preemption, Plf. Br. (ECF No. 20) at 19. Second, through PRWORA, which is a welfare statute enacted to encourage work requirements, *see* 142 Cong. Rec. S8395-04, S8396, 1996 WL 407921, Congress did not give Florida a free hand to determine every conceivable state public benefit right of all visa holders, including F-1 visa holders, or "to make its own decisions about the kind of graduate teaching assistantships at issue here," Resp. Br. (ECF No. 26) at 15, as evidenced by the extensive federal requirements with which universities must comply in academically employing students holding F-1 visas, *see* Complaint (ECF No. 1) ¶¶ 53–54; Plf. Br. (ECF No. 20) at 15, 22–23.[11]

> **2. Field Preemption Applicable to Federal Alien Registration, and Constitutional Preemption, Prohibit State Employment Regulation of National Security Through SB 846.**

The defense repeatedly but mistakenly asserts a clear separation between federal alien registration and state employment regulation. *See* ECF No. 26 at 12, 18–19. No such separation exists because, through preemption, the former can trump the latter, as it does here. *See* Plf. Br. (ECF No. 20) at 19–25. This defense is irreconcilable with controlling Supreme Court precedent involving alien registration and employment authorizations and rights. Were the defense correct, state power over employment regulation in *Takahashi* and *Traux* would have justified the states

---

https://www.flbog.edu/member/26225/ (last visited May 28, 2024). No Board of Governors Defendant has any background or expertise in any kind of security, much less national security, or immigration. *See* State University System of Florida, *Members*, https://www.flbog.edu/board/members/ (last visited May 28, 2024).

[11] To the extent PRWORA is relevant to "postsecondary education," 8 U.S.C. § 1621(c)(1)(B), it applies at most to educational rights like admission, enrollment, and tuition, and this is the sense in which *Estrada* addressed it. *Estrada v. Becker*, 917 F.3d 1298, 1308 n.12 (11th Cir. 2019). Contrary to Defendants' assertion, *Estrada* had nothing to do with employment rights generally or academic employment rights specifically and said nothing on the subjects, and Plaintiffs are not suing in regard to educational rights such as admission and enrollment.

ignoring, disagreeing with, or countermanding national employment authorizations extended through exclusive federal immigration power. *See Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419–20 (1948); *Truax v. Raich*, 239 U.S. 33, 40–42 (1915). But that is not the law. As *Takahashi* made plain, the federal government has exclusive jurisdiction over "the terms and conditions" of immigration and "[u]nder the Constitution *the states are granted no such powers*." 334 U.S. at 419 (emphasis added). Both the Supreme Court and the Eleventh Circuit have firmly established that such "terms and conditions" include residency issues such as nationwide employment authorizations and the ability to work. Plf. Br. (ECF No. 20) at 19–21, 23. Pursuant to state power over employment regulation, Florida public universities have a general, but not completely unfettered, right to choose whether to employ Plaintiffs Yin and Guo. Due to preemption, Florida must honor the federal government's national security determinations made during the exclusive alien registration process, and may not invoke disagreement to prohibit their academic employment.

Neither *DeCanas* nor *Garcia* support Defendants' assertion that a clean demarcation exists between alien registration and state employment regulation. Resp. Br. at 12 (ECF No. 26). *DeCanas* accepted that "even state regulation designed to protect vital state interests," including "state authority to regulate the employment relationship," "must give way to paramount federal legislation." *DeCanas v. Bica*, 424 U.S. 351, 357 (1976). *DeCanas* narrowly concluded that, in the specific context presented, no congressional preclusive intent over "the area of employment regulation" was present, while reaffirming earlier preemption decisions invalidating state laws that "imposed burdens on aliens lawfully within the country that created conflicts with various federal laws," *id.* at 362, which is precisely the case here, where SB 846 conflicts with national security determinations that are part of alien registration.

Defendants contend that *Garcia* stands for the overly broad proposition that "there is no field preemption regarding what 'information . . . must be supplied as a precondition of employment.' " ECF No. 26 at 12 (quoting *Kansas v. Garcia*, 589 U.S. 191, 209–10 (2020)). *Garcia* does not so hold. *Garcia* holds that federal immigration law "does not foreclose all state regulation of information that must be supplied as a precondition of employment" and "does not create a comprehensive and unified system regarding the information that a State may require employees to provide." *Garcia*, 589 U.S. at 209–10. Nothing in Plaintiffs' argument challenges these *Garcia* propositions, and nothing in *Garcia* undermines Plaintiffs' argument that

preemption requires Florida to respect national security determinations that are part of federal alien registration.

Alien registration is subject to field preemption, as Defendants concede, but they contend that SB 846 does not "requir[e] aliens seeking employment with [Florida] . . . to '*complete . . . registration documents.*'" ECF No. 26 at 12 (emphasis added and citations omitted). SB 846 requires nonimmigrant foreign principals to submit an exemption application to the Board of Governors showing they do not threaten national security, which is the only way such candidates may obtain academic employment at a Florida public university. Fla. Stat. §§ 288.860(3)(d), (e); Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(c)-(d). These SB 846 provisions constitute a state requirement that an alien "complete" a state "registration document." Just as requiring aliens to register with the federal government constitutes a registration requirement, *see Arizona v. United States*, 567 U.S. 387, 400 (2012), so is requiring covered nonimmigrants to register with Florida, as SB 846 does. "The basic subject of the state and federal laws is identical—registration of aliens as a distinct group." *Hines v. Davidowitz*, 312 U.S. 52, 61 (1941). Just as negating any national security concern is one federal registration requirement, Plf. Br. (ECF No. 20) at 14, negating a national security concern is the object of SB 846's registration requirement. Governments use registration requirements to assess, monitor, and locate aliens. This is precisely the point of SB 846, which makes relevant the annual reporting requirement to top Florida governmental officials. *Id.* at 20; *contra* Resp. Br. (ECF No. 26) at 12. The defense that SB 846 merely "governs the state's internal decision-making process for hiring individuals in certain research positions," ECF No. 26 at 12, ignores the methodology and the result: registration. *See United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012) ("preemption analysis must contemplate *the practical result* of the state law") (emphasis added).

The defense's arguments against constitutional preemption lack merit because they are nonsensical, inapposite, or misrepresent the Eleventh Circuit's *Estrada* decision. The defense claims that constitutional preemption can apply only to laws "that even 'Congress itself would be powerless to authorize or approve,'" but then describes such laws as including "those that are 'essentially a determination of who should or should not be admitted into the country, and the conditions under which' aliens 'may remain' in the country." ECF No. 26 at 19. These are undoubtedly laws that the Constitution authorizes Congress to authorize and approve, as Congress has repeatedly done, and upon which Plaintiffs rely.

The defense wrongly contends that the Eleventh Circuit has rejected the argument that "state laws governing the admission of aliens to state universities are constitutionally preempted 'conditions under which a legal entrant may remain.'" ECF No. 26 at 19 (citing *Estrada*, 917 F.3d at 1306). First, *Estrada* involved educational rights in university admission and thus is inapposite to this case involving employment rights. Second, *Estrada* did not so hold. It upheld a Georgia law that prohibited Deferred Action for Childhood Arrivals recipients from attending the state's three most selective universities because it held they were not "lawfully present." *Estrada*, 917 F.3d at 1301–02, 1306, 1308–11. Its holding is limited to cases of undocumented immigrants, and it acknowledged elsewhere that lawful residents such as Plaintiffs Yin and Guo have greater rights, and justified its holding in important part because the state law did not "strike[]" at the challengers' "ability to exist in the community nor conflict[] with any congressional determination," *id.* at 1303–06, 1309–10, both of which factors are present here, Plf. Br. (ECF No. 20) at 19–21, 23.

### 3. SB 846 Is Preempted Based upon National Foreign Affairs Interests, and Preemption Trumps State Police and Spending Powers.

Defendants contend that Plaintiffs "offer no explanation" for how SB 846, as a security statute, also could impact foreign policy. ECF No. 26 at 18. But Plaintiffs have pointed out that it is the Supreme Court that has repeatedly offered this explanation, including prominently in *Arizona*. ECF No. 20 at 24–25. *Arizona* repeatedly explains how immigration policy—including but not limited to registration requirements and national security concerns—"touche[s] on foreign relations." *Arizona*, 567 U.S. at 395, 400, 409; *see also Hines*, 312 U.S. at 62 (describing the constitutional "supremacy of the national power in the general field of foreign affairs, including power over immigration").

The defense attempt to limit *Arizona*'s foreign affairs concern to registration requirements, *see* ECF No. 26 at 18, fails because, as already explained, SB 846 is a registration statute.[12] Moreover, *Arizona* expressly and repeatedly explains that it is federal "immigration" and "immigration policy" as a whole, including but not limited to registration, that impacts foreign affairs concerns. 567 U.S. at 395–96, 400.

The defense cannot avoid foreign affairs preemption on the basis that "SB 846 . . . looks *inward* to the *State's own security concerns*, not outward." ECF No. 26 at 18 (emphasis added).

---

[12] *See supra* Part II.B.2.

This assertion is blatantly false. By SB 846's explicit statutory terms and Governor DeSantis's own words, its aim is *national* security[13]—as Florida itself repeatedly acknowledges, *id.* at 1, 5, 15—*not* Florida security. Thus, the defense attempt to distinguish *Crosby* and *Odebrecht* on the basis that SB 846 looks inward, *id.* at 18–19, fails as well. *Crosby* and *Odebrecht* held that state statutes having external impacts upon foreign affairs were subject to preemption even if premised upon state spending power. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 n.7 (2000); *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1286 (11th Cir. 2013). SB 846, like the *Odebrecht* Florida law, seriously impacts foreign affairs, even "select[ing] by name . . . foreign countr[ies]," thus Florida's sovereign interest in its spending power is insufficient to avoid preemption. *Odebrecht*, 715 F.3d at 1286–87 (internal quotations and citation omitted).

Also unavailing is the defense reliance upon *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 16–17 (1981). ECF No. 26 at 11. *Pennhurst* is inapposite because it concerned "Congress' power to enforce the Fourteenth Amendment" by using the Spending Clause to condition federal grant funds upon state treasury expenditures. 451 U.S. at 15. Even if it had any application here, Defendants misapply it. This case involves a *prohibition* on state power, which *Pennhurst* accepted, not any claim to an "*affirmative* obligation[] on [a] State," of which it was skeptical. *Id.* at 16. Plaintiffs Yin and Guo are not claiming a "right" in the sense that FIU *must* employ them due to their F-1 visas. Rather, this case involves a preemption-required *prohibition*—stemming from congressional immigration statutes and related regulations—against state vetoes over national security determinations rendered during the exclusive federal immigration and alien registration process. This is precisely the sort of congressionally-derived *prohibition* that even *Pennhurst* accepted as legitimate.

### C. SB 846 Violates Equal Protection.

Defendants attempt to avoid strict scrutiny through baseless and confusing arguments. SB 846 cannot prevail under this exacting standard, as proven by their failure to explain how the law is narrowly tailored and necessary to advance a compelling government interest.

---

[13] Individualized exemptions from SB 846 can be obtained only upon showing that an academic hire "is not detrimental to the *safety or security of the United States or its residents*." Fla. Stat. §§ 288.860(3)(d), (e) (emphasis added); *see also* Fla. Univ. Bd. Governors Reg. §§ 9.012(8)(c)-(d); Plf. Br. (ECF No. 20) at 11 & text accompanying n.3.

First, Defendants' assertion that "temporary aliens"—nonimmigrants—are not a protected alien subgroup, ECF No. 26 at 20–21, ignores long-standing Supreme Court jurisprudence emphasizing that alienage classifications are generally subject to strict scrutiny, which the Eleventh Circuit has followed. *E.g.*, *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Bernal v. Fainter*, 467 U.S. 216, 219 & n.5 (1984); *Graham v. Richardson*, 403 U.S. 365, 376 (1971); *United States v. Osorto*, 995 F.3d 801, 811 (11th Cir. 2021); *Rodriguez ex rel. Rodriguez v. United States*, 169 F.3d 1342, 1347 (11th Cir. 1999). Defendants rely upon *Foley v. Connelie*, 435 U.S. 291, 294–95 (1978), ECF No. 26 at 20, but its merely cautionary language cannot displace the controlling precedent upon which Plaintiffs rely, in particular because *City of Cleburne* and *Bernal* are more recent than *Foley*.

Defendants rely only on two out-of-circuit cases to carve a nonimmigrant exception to strict scrutiny. ECF No. 26 at 20–21. But these cases contravene the controlling precedents of *City of Cleburne*, *Bernal*, and *Graham*, which instructed that strict scrutiny generally applies to laws discriminating against *all noncitizens* residing in the United States, which should particularly apply to *lawfully-present noncitizens*. As the Second Circuit has confirmed, the Supreme Court "has never held that lawfully admitted aliens are outside of *Graham*'s protection" and "has never distinguished between classes of *legal* resident aliens." *Dandamudi v. Tisch*, 686 F.3d 66, 74 (2d Cir. 2012) (emphasis added).[14]

Defendants' reliance upon *Estrada* to assert that the Eleventh Circuit has followed the reasoning of the two out-of-circuit cases fails. Defendants admit that *Estrada* is distinguishable because it involved undocumented Deferred Action for Childhood Arrivals ("DACA") recipients—not lawfully present nonimmigrants—that a Georgia law prohibited from attending Georgia's three most selective universities, to which rational basis review was applied. *Estrada*, 917 F.3d at 1301–02, 1308–11; ECF No. 26 at 21. Holding that DACA recipients are not "lawfully present" in the United States, *Estrada* falls squarely within the existing *Graham* exception for undocumented aliens, an exception rooted in the Supreme Court's *Plyler v. Doe* decision. *Estrada*, 917 F.3d at 1308–09 (relying on *Plyler* in reasoning that DACA recipients are

---

[14] Defendants attempt to distinguish *Dandamudi* on the basis that "SB 846 does not sweep so broadly" as to discriminate against all nonimmigrants. Resp. Br. at 21 n.14 (ECF No. 26). *Dandamudi* nonetheless remains persuasive, and this court has relied upon it to reject a new nonimmigrant exception to the general strict scrutiny rule for alienage classifications. *See Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1324 (S.D. Fla. 2020).

undocumented aliens not lawfully in the United States and thus are not a suspect class); *see also Plyler v. Doe*, 457 U.S. 202, 223 (1982) (holding that undocumented aliens are not suspect classes); *Dandamudi*, 686 F.3d at 74 (explaining undocumented alien exception to *Graham*). Recognizing that lawfully-present nonimmigrants enjoy greater constitutional protections than undocumented immigrants, the Georgia law at issue in *Estrada* exempted nonimmigrants from its prohibitions. *Estrada*, 917 F.3d at 1301, 1304. For reasons equally applicable here, this court has narrowly interpreted *Estrada*'s application of rational basis review, and relied on *Dandamudi* in reasoning that an employer's policy prohibiting the employment of work-authorized DACA undocumented aliens would be subject to strict scrutiny because it could deny such aliens their federal right to work if enacted by all employers. *See Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1323–26 (S.D. Fla. 2020). The same strict scrutiny should apply here.

Second, Defendants contend that SB 846 does not proxy discriminate based on national origin and race. ECF No. 26 at 22. But the statute, on its face, singles out people whose domicile is in China or the other countries of concern. Discrimination based on "domicile" in a foreign country is, in practice, discrimination based on national origin and race. *See Rice v. Cayetano*, 528 U.S. 495, 514 (2000);[15] *see also Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 309 (2013). "Proxy discrimination is a form of facial discrimination." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013); *see also McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992).

Third, SB 846 contravenes equal protection because of its discriminatory intent and effects based on national origin and race. Plf. Br. (ECF No. 20) at 29–31. Defendants argue that discrimination did not motivate SB 846 because "the target of SB 846 is the Chinese government, not the Chinese people." ECF No. 26 at 23–24. If that was the case, the Legislature could have limited the law to foreign powers and their agents, *e.g.*, HB 379, Reg. Sess. (Ala. 2023), yet it did not. Defendants concede that SB 846 "is not limited to Chinese officials but applies also to individuals domiciled in China," ECF No. 26 at 24, along with individuals domiciled in six other countries, so long as they are not United States citizens or lawfully

---

[15] Defendants' attempt to distinguish *Rice* is conclusory and unsupported. Resp. Br. at 23 n.15 (ECF No. 26). The state law in *Rice* used ancestry as a proxy for race. 528 U.S. at 514. SB 846 uses domicile as a proxy for nationality and race, similarly "singl[ing] out identifiable classes of persons" solely because of their protected traits. *Id.* at 515 (citation omitted).

permanent residents. In drafting such a broad definition, legislators expressed their belief that individuals domiciled in China are presumed threats to national security, and ensured that SB 846 carried out this discriminatory purpose and effect.

### D. SB 846 Is Void for Vagueness Under Due Process.

Defendants' reliance on generalized vagueness standards and inapposite and some out-of-circuit precedents fails to engage the substance of, or rebut, Plaintiffs' vagueness showing in reliance on extensive Florida law. For example, Defendants simply proclaim in conclusory fashion that the Board of Governors's domicile interpretation "does not" conflict with FIU's, Resp. Br. at 26 (ECF No. 26), but Defendants offer absolutely no explanation for why this is so or why Plaintiffs' detailed analysis to the contrary, Plf. Br. (ECF No. 20) at 33, is incorrect. Defendants submit that "Plaintiffs' vagueness claim is belied by their own confident assertion that they are not domiciled in Florida under the 'ubiquitous' two-part common-law test." ECF No. 26 at 25. But Plaintiffs' actual argument is that they *cannot* be confident given three separate domicile definitions that are directly or closely tied to SB 846, as well as the conflicting domicile position FIU is asserting as to temporary visa holders in comparison to Florida's litigation positions on the same issue involving a closely related statute having identical statutory language. Plf. Br. (ECF No. 20) at 31–33. Defendants do not even acknowledge, much less seek to explain or resolve, Florida's multiple contradictory domicile analyses. Vagueness doctrine exists to prevent such arbitrary and capricious enforcement, free from effective accountability, *id.* at 34, thus it is no answer to assert that vague ambiguities should be left to resolution in Florida courts as "interpretative question[s]," Resp. Br. (ECF No. 26) at 26.

### III. CONCLUSION

For the all the reasons explained above, Plaintiffs respectfully ask this court to enjoin SB 846's enforcement and grant all the relief available at this time that Plaintiffs request in their Complaint.

Respectfully submitted this 28th day of May 2024,

/s/ *Daniel Boaz Tilley*

| | |
|---|---|
| Daniel Boaz Tilley (FBN 102882)<br>**ACLU FOUNDATION OF FLORIDA**<br>4343 West Flagler Street, Suite 400<br>Miami, FL 33134<br>(786) 363-2714<br>dtilley@aclufl.org | Keliang (Clay) Zhu<br>**CHINESE AMERICAN LEGAL DEFENSE ALLIANCE**<br>7901 Stoneridge Drive, Suite 208<br>Pleasanton, CA 94588<br>(925) 399-5856<br>czhu@dehengsv.com |
| Fabio Arcila, Jr.<br>**CHINESE AMERICAN LEGAL DEFENSE ALLIANCE**<br>7901 Stoneridge Drive, Suite 208<br>Pleasanton, CA 94588<br>(925) 399-5856<br>farcila@farcilalaw.com | David A. Perez<br>**PERKINS COIE LLP**<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099<br>(206) 359-6767<br>dperez@perkinscoie.com |
| Evelyn Y. Pang<br>**PERKINS COIE LLP**<br>1155 Avenue of the Americas, 22nd Floor<br>New York, NY 10036<br>(212) 261-6875<br>epang@perkinscoie.com | Chad B. Henry<br>**PERKINS COIE LLP**<br>700 13th Street NW, Suite 800<br>Washington, DC 20005<br>(202) 434-1688<br>chadhenry@perkinscoie.com |
| Saba Chinian<br>**PERKINS COIE LLP**<br>505 Howard Street, Suite 1000<br>San Francisco, CA 94105<br>(415) 954-3252<br>schinian@perkinscoie.com | |

***Attorneys for Plaintiffs***