UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| ZHIPENG YIN, et al.<br><br>   *Plaintiffs*,<br><br> v.<br><br>MANNY DIAZ, in his official capacity as Commissioner of the Florida Department of Education, et al.,<br><br>   *Defendants*. | No. 1:24-cv-21129-JEM-EIS |

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EFFECT
OF PRELIMINARY INJUNCTION ON MOTION TO DISMISS**

  In 2023, Florida enacted SB 846 with unanimous bipartisan support. That law puts modest limits on the ability of the state's own universities to hire individuals visiting the United States from certain totalitarian nations. Under SB 846, universities need approval before they can collaborate with a "foreign principal" of China, Russia, Iran, North Korea, Cuba, Venezuela, or Syria in conducting research at Florida's public universities. Fla. Stat. § 288.860(1)(a)–(b), (3)(a)–(b). The statute does not prohibit such collaboration. It merely requires the State University System's Board of Governors to approve the arrangement, which is permissible if it is "valuable to students" and "not detrimental to the safety or security of the United States or its residents." *Id.* § 288.860(3)(d).

  Plaintiffs claim that SB 846 is preempted by federal law, violates the Equal Protection Clause, and violates the Due Process Clause. DE1 ¶¶ 42–88. Plaintiffs moved for a preliminary injunction. DE20. In July 2024, Defendants moved to dismiss the complaint in its entirety, arguing that Plaintiffs lacked standing and that Plaintiffs had failed to state a claim on which relief could be granted. DE35. In March 2025, this Court granted the motion for a preliminary injunction in part. DE53 at 3 (adopting the magistrate judge's report and recommendation at DE43). It ruled that the student Plaintiffs (Yin and Guo) likely had standing to challenge the law and that federal

law likely preempts SB 846. DE53 at 3. But it determined that the professor Plaintiff (Guan) likely did not have standing. It also determined that the student Plaintiffs' equal protection and due process claims were unlikely to succeed. DE53 at 1–2.

The Court then issued an order requesting supplemental briefing on how its preliminary-injunction order affected Defendants' motion to dismiss. DE54.

The effect of the preliminary-injunction order on Guan's standing and on the student Plaintiffs' equal-protection and due-process claims is clear. The Court's rulings that Guan was unlikely to establish standing and the student Plaintiffs were unlikely to succeed on their equal-protection and due-process claims were predicated on pure questions of law. *See* DE43 at 16–19, 32–40. And while Plaintiffs apparently intend to argue that the appeal deprives the Court of jurisdiction to decide the motion to dismiss, they are wrong. Accordingly, Guan and the student Plaintiffs' equal-protection and due-process claims should be dismissed.

Start with Guan. By adopting the magistrate judge's reasoning, this Court determined that Guan lacked standing under Article III. *See* DE53 at 3. Standing is "the irreducible constitutional minimum" "that a plaintiff must satisfy" for a court to adjudicate a dispute between each plaintiff and each defendant. *Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 732 (11th Cir. 2018) (quotation marks omitted). Each "plaintiff[] must demonstrate standing for each claim that [he] press[es] against each defendant, and for each form of relief that [he] seek[s]." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quotation marks omitted). "[A]bsent standing, a court must dismiss the plaintiff's claim without prejudice." *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1311 (11th Cir. 2024) (quotation marks omitted). And standing requires that plaintiffs demonstrate that any injury does not rest on a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414

(2013). Because this Court determined that Guan's injuries as alleged "result from a speculative chain of possibilities," DE43 at 17 (citation omitted), Guan must be dismissed from the case.

Next, the student Plaintiffs' equal-protection claims. The student Plaintiffs assert (DE1 ¶¶ 1, 72) that SB 846 is subject to strict scrutiny under the Equal Protection Clause because it (1) facially discriminates based on alienage; (2) uses domicile as a proxy to discriminate on the basis of race and national origin; and (3) is motivated by animus against people of Chinese race and national origin. To reach strict scrutiny, the student Plaintiffs must show that the law facially discriminates against a protected characteristic or is motivated by animus toward a protected characteristic. *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Otherwise, a law need only be "rationally related to a legitimate state interest." *Id.* This Court rejected the application of strict scrutiny from each of the equal-protection theories.

On the first theory, the Court determined that alienage classifications do not reach a protected characteristic unless the classification affects lawful permanent resident aliens (LPRs). DE43 at 35. Supreme Court cases have only ever applied strict scrutiny to laws affecting LPRs, and gone no further. DE43 at 35. The Court declined to extend those cases, in accordance with *Estrada v. Becker*, where the Eleventh Circuit "decline[d] to extend the Supreme Court's decisions concerning resident aliens to different alien categories." 917 F.3d 1298, 1309–10 (11th Cir. 2019) (citation omitted). SB 846's application to aliens other than LPRs, such as the visa-holders in this case, does not trigger strict scrutiny. This ruling was correct.

On the second theory, the Court determined that "SB 846 does not facially discriminate on the basis of either race or national origin; it makes classifications based on where an alien is *domiciled*." DE43 at 33. "[U]nlike race, ancestry, or national origin, which are immutable characteristics established at birth, domicile is not fixed at birth." DE43 at 34. "Domicile is changeable over

time and in many if not most cases reflects a person's active or passive choice." DE43 at 34. In other words, the Court correctly rejected Plaintiffs' "proxy" theory that treats domicile as a stand-in for race or national origin. That makes sense because the theory is a thinly veiled attempt at an end-run around *Washington v. Davis*, 426 U.S. 229 (1976), and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). Nor is this one of the "rare" cases where official action is "unexplainable on grounds other than race." *Arlington Heights*, 429 U.S. at 266.

Finally, the Court found no showing of animus sufficient to overcome the presumption of legislative good faith. DE43 at 36. The only evidence Plaintiffs cited to support their proposition was a press release by Governor DeSantis in which he explained that SB 846 was promulgated "to counteract the malign influence of the Chinese Communist Party [('CCP')] in the state of Florida." DE1 ¶¶ 24–25, 62. But as the Court correctly determined, "these comments are focused on the Chinese Communist Party and not Chinese individuals generally." DE43 at 36.

Without heightened scrutiny, rational basis applies. DE43 at 37. Because "the Plaintiffs do not argue that SB 846 fails to satisfy rational basis scrutiny," they failed to "carr[y] their burden" on their equal-protection challenge. DE43 at 37. The student Plaintiffs' equal-protection claims should be dismissed as a result.

The student Plaintiffs' due-process claims should meet the same fate. The student Plaintiffs assert that the term "domicile" in SB 846 is vague. DE1 ¶¶ 75–88. To show vagueness, however, they must show that this term "is so indefinite as 'really to be no rule or standard at all.'" *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1310 (11th Cir. 2009). The Court correctly found that "'[d]omicile' has a common and generally accepted meaning in Florida common

law," which renders that term not vague. DE43 at 38. The due-process claims should also be dismissed.

These outcomes are not altered by the fact that the Court rendered its conclusions in terms of "likelihood of success," the standard for a preliminary injunction. *See* DE43 at 12. Though the overall determination was preliminary, the legal conclusions underlying these rulings were not hedged in terms of likelihood and were correct—to the extent they covered Guan's standing and the equal-protection and due-process claims. The logic of those legal determinations compels dismissal of those parts of the Plaintiffs' complaint.

\* \* \* \* \*

Nor does the Board's appeal rob this Court of jurisdiction over the case. Any argument that this Court lacks jurisdiction over the motion to dismiss would be at loggerheads with binding Eleventh Circuit precedent. "When an appeal is taken from the denial or granting of a preliminary injunction, the district court retains full authority and jurisdiction to proceed toward a judgment on the merits." *Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 789 n.13 (11th Cir. 1984); *see also* 16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3921.2 (3d ed. 2025) (citing myriad cases to this effect). As the Eleventh Circuit observed in *State of Alabama v. EPA*, "[t]he district court had jurisdiction to grant summary judgment and to dismiss the suit despite the pending interlocutory appeal" of a preliminary injunction because "that decision did not divest this Court of its jurisdiction over the interlocutory appeal." 871 F.2d 1548, 1553–54 (11th Cir. 1989).

The Eleventh Circuit has applied a similar doctrine to interlocutory appeals in criminal cases. *United States v. White*, 846 F.2d 678, 693 (11th Cir. 1988) ("Nonetheless, the district court properly concluded that it had jurisdiction to consider a motion to dismiss the indictment, despite the pending interlocutory appeal before this Court."). All of that makes sense: Preliminary

injunctions involve unique, narrow determinations about the likelihood of success on the merits, the equities, and whether the status quo should be maintained pending the rest of the litigation. *See Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020). Preliminary injunctions would make little sense as an "extraordinary remedy" to preserve the status quo if every appeal of a preliminary injunction sent the underlying case to a screeching halt. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008).

In line with that binding precedent, district courts have had no issues with continuing cases during interlocutory appeals. *See, e.g.*, *Cmty. Mar. Park Assocs., Inc. v. Mar. Park Dev. Partners, LLC*, No. 3:11-cv-60, 2014 WL 415955, at *3 n.8 (N.D. Fla. Feb. 4, 2014) ("The Preliminary Injunction Order is currently the subject of an appeal to the Eleventh Circuit Court of Appeals . . . ; however, this Court retains jurisdiction over the complaint."), *aff'd*, 606 F. App'x 482 (11th Cir. 2015); *De La Fuente v. Kemp*, No. 1:16-cv-2937, 2017 WL 2289307, at *2 n.3 (N.D. Ga. Mar. 17, 2017) (similar); *Larkin v. Lawrence*, No. CV 309-024, 2010 WL 724107, at *3 n.4 (S.D. Ga. Mar. 2, 2010) (similar); *Miccosukee Tribe of Indians of Fla. v. United States*, 650 F. Supp. 2d 1235, 1243 n.6 (S.D. Fla. 2009) (similar); Order on Motion to Dismiss, *UPSIDE Foods, Inc. v Simpson*, No. 4:24-cv-316, slip op. at 2–3  (N.D. Fla. Apr. 25, 2025) (Walker, C.J.), ECF No. 85 (ruling on motion to dismiss despite pending preliminary-injunction appeal). District courts also routinely grant or deny permanent injunctions pending appeals of orders granting or denying preliminary injunctions. *See, e.g.*, *Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1173 (6th Cir. 1995); *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989); *Ry. Labor Exec. Ass'n v. City of Galveston*, 898 F.2d 481, 481 (5th Cir. 1990). That event occurs so often, it spawned the doctrine that when district courts grant a permanent injunction while a preliminary injunction is on appeal (which they have the power to do), the appeal "becomes moot when the

trial court enters a permanent injunction, because the former merges into the latter." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 314 (1999). The Supreme Court has never intimated that such orders exceed the district court's jurisdiction.

It is also worth considering the practical applications of Plaintiffs' view. Their vision would bring about a sweeping change to district court litigation, which ordinarily continues during these types of appeals. "Interlocutory injunction appeals would come at high cost if the trial court were required to suspend proceedings pending disposition of the appeal." Wright, Miller, & Cooper, *supra*, § 3921.2. "The delay and disruption alone would be costly," *id,* and the "[d]elay accomplishes nothing," *Johnson*, 734 F.2d at 789 n.13. "Indeed, if any different treatment is indicated it would be to expedite the matter." *Id.* Continuing with proceedings in this Court, moreover, "pose[s] little threat to orderly disposition of the appeal." Wright, Miller, & Cooper, *supra*, § 3921.2.

Plaintiffs' position would also penalize a party for exercising its right to an interlocutory appeal. Under Plaintiffs' view, every time a preliminary injunction determination is appealed, the district court must sit on its hands in the interim. Exercising the right to an interlocutory appeal would deprive both parties of rulings by the district court on other motions, including motions to dismiss even on claims unrelated to the preliminary injunction. That would open those parties up to costly discovery, even if the Court would dismiss those claims as patently frivolous. As the Court is well aware, discovery is a massive expenditure of time and effort, both on the part of the parties and the Court itself.

*Mahone v. Ray* is not to the contrary; it is not even in the same ballpark. That case involved an appeal from final judgment, where a party moved for reconsideration at the same time. 326 F.3d 1176, 1179 (11th Cir. 2003). But the concerns related to final judgments look nothing like those

7

from an interlocutory appeal. Because final judgment concludes a case, the interests in the district court's deciding non-collateral matters and avoiding delay are non-existent. *See* Wright, Miller, & Cooper, *supra*, § 3921.2. While the court in *Mahone* stated that an appeal of a final judgment ordinarily "divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal," 326 F.3d at 1179 (quotation omitted), "jurisdiction is retained where, as here, the appeal is from an order granting or denying a preliminary injunction," *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996); *see also* Wright, Miller, & Cooper, *supra*, § 3921.2 (drawing the same distinction between interlocutory and final judgments). That principle reconciles *Mahone* with *Johnson* and other Eleventh Circuit cases like it. The Board's motion to dismiss fits that principle neatly, and this Court therefore has jurisdiction to consider the motion to dismiss.

\* \* \* \* \*

For these reasons, the Court should dismiss Plaintiff Guan from the case and dismiss Counts III and IV, which claim that SB 846 violates the Equal Protection and Due Process Clauses of the Constitution.

Defendants remain convinced that the remaining parts of the preliminary-injunction order—that Yin and Guo likely have standing and that their preemption claims likely have merit—were erroneous. Defendants have already appealed those parts of the preliminary-injunction order to the Eleventh Circuit. DE55. Defendants thus continue to urge dismissal of the entire complaint. If one assumes the correctness of those parts of the Court's order, however, Yin, Guo and their claims of preemption should not be dismissed.

Respectfully submitted on May 2, 2025.

JAMES UTHMEIER
 *Attorney General*

 /s/ *Robert S. Schenck*
JEFFREY P. DESOUSA (FBN 110951)
 *Acting Solicitor General*
NATHAN A. FORRESTER (FBN 1045107)
DAVID M. COSTELLO (FBN 1004952)
 *Chief Deputy Solicitors General*
ROBERT S. SCHENCK (FBN 1044532)
CHRISTINE PRATT (FBN 100351)
 *Assistant Solicitors General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*nathan.forrester@myfloridalegal.com*
*david.costello@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*
*christine.pratt@myfloridalegal.com*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on May 2, 2025, to all counsel of record.

/s/ *Robert S. Schenck*
Assistant Solicitor General